FRANCIS E. STACKENWALT, PLAINTIFF, RESPONDENT, CROSS-APPELLANT, v. JOHN C. WASHBURN, DEFENDANT, THIRD-PARTY PLAINTIFF, APPELLANT, CROSS-RESPONDENT, AND VICTOR GRAVINESE AND JOHN T. QUINN, PLAINTIFFS, RESPONDENTS, CROSS-APPELLANTS, v. JOHN C. WASHBURN, DEFENDANT AND THIRD-PARTY PLAINTIFF, APPELLANT, CROSS-RESPONDENT, v. BUFFALO WOOD PRODUCTS, INC., WILLIAM D. McGRAW, JEAN KOH AND PUN KIEN KOH, ROBERT KOH, THIRD-PARTY DEFENDANTS, RESPONDENTS, CROSS-APPELLANTS, AND J. DONALD WOLFE AND SAMUEL E. WALBORN, THIRD-PARTY DEFENDANTS, RESPONDENTS.

Argued January 21, 1964—Decided March 16, 1964.

*Mr. Meyer L. Sakin* argued the cause for defendant, appellant and cross-respondent, John C. Washburn.

*Mr. William B. Scatchard, Jr.* argued the cause for plaintiff, respondent and cross-appellant, Francis E. Stackenwalt (*Messrs. Capehart & Scatchard,* attorneys).

*Mr. S. Arthur Levy* argued the cause for plaintiffs, respondents and cross-appellants, Victor Gravinese and John T. Quinn.

*Mr. Sidney P. McCord, Jr.* argued the cause for respondents and cross-appellants, Buffalo Wood Products, Inc. and William D. McGraw (*Messrs. McCord, Farrell & Eynon,* attorneys).

*Mr. Arthur Montano* argued the cause for respondents and cross-appellants, Jean Koh, Pun Kien Koh, and Robert Koh (*Messrs. Kisselman, Devine, Deighan & Montano,* attorneys).

*Mr. Joseph P. Rose* argued the cause for respondents, J. Donald Wolfe and Samuel E. Walborn (*Messrs. Oppenheim & Oppenheim,* attorneys).

The opinion of the court was delivered by

SCHETTINO, J. Plaintiffs Gravinese, Quinn and Stackenwalt sued defendant Washburn for personal injuries. Defendant answered and filed a third-party complaint against Buffalo Wood Products, Inc. (Buffalo), McGraw, Jean Koh, Pun Kien Koh and Robert Koh (the Kohs), Wolfe and Walborn as third-party defendants for personal injury and property damage and for contribution. Pun Kien Koh cross-claimed against Wolfe, Walborn and Washburn for damages and the Kohs cross-claimed against these same three for contribution. All causes were consolidated for trial.

Washburn's third-party complaints were dismissed by the court prior to submission to the jury. Plaintiffs' claims against Washburn were submitted to the jury and resulted in verdicts in favor of Gravinese, of $12,000, Quinn, of $16,000, and Stackenwalt, of $6,000. No disposition appears in the record of the Kohs' affirmative claim for relief.

Washburn appealed to the Appellate Division which, by a 2–1 vote, remanded for a new trial as to the liability of Washburn to plaintiffs and as to the liability of Buffalo and the Kohs to Washburn, and affirmed the dismissal of Washburn's action against Wolfe and Walborn. By virtue of the dissent, appeals as of right (R. R. 1:2–1(b)) were taken to this Court by Stackenwalt, Gravinese and Quinn, Washburn, Buffalo and McGraw and the Kohs.

The facts are not essentially in dispute. The accident from which these actions arose occurred December 28, 1959, shortly after 7 A. M., on the New Jersey Turnpike, and involved at least nine motor vehicles. Stackenwalt, Gravinese, Quinn and Washburn, all residing in the Camden-Philadelphia area, were employed by the Armstrong Cork Company at Port Reading, New Jersey, and had formed a car pool for going to and from work. Each one drove his automobile every fourth day. On that day it was Washburn's turn to drive. He awakened at about 5 A. M. and noticed that it was "very foggy." At about 5:30 A. M. Washburn telephoned Gravinese and asked him whether in view of the fog they should drive.

Gravinese replied that as they were already up, they should "chance it." Gravinese drove his car to Washburn's residence. He said that the fog was "bad"; that visibility was limited to 30–40 feet; and that he drove the entire eight miles from his home to Washburn's in low gear. Gravinese got into Washburn's car and the latter drove to Exit 4 of the New Jersey Turnpike where they met Stackenwalt and Quinn. Quinn testified that he noticed quite a bit of fog and thus drove at a reduced rate to the meeting place. Stackenwalt had the same experiences. After a discussion of the weather conditions, they decided to "go ahead and try it." Gravinese sat in the front of the car with Washburn and Stackenwalt and Quinn in the rear. They entered the northbound part of the Turnpike about 6 A. M. Shortly thereafter Gravinese, Stackenwalt and Quinn fell asleep.

Because of the fog, the Turnpike Authority had reduced the speed limit from 60 miles to 35 miles per hour.

Washburn testified that when he passed a sign which indicated that a certain Howard Johnson Restaurant, at which they intended to stop for coffee, lay ahead, he slowed his speed from 35 m.p.h. to between 25 and 30 m.p.h. Washburn was driving in the center of the three northbound lanes. He said that after going a few miles further he drove into an area where the fog was "a little heavier than normal. Just as I came into this area I seemed to hear noises in front of me. I heard the noises and I saw what I assumed to be a couple of lights, but they didn't seem to be spaced like they were taillights on a car."; one seemed to be directly in front of him and the other "over to the left." He said that "at this point a number of things seemed to have occurred almost all at once. I applied my brakes, turned my wheels to the right. I was struck in the rear and I seemed to strike something in the front." He was rendered unconscious and when he revived found himself lying on the side of the road. He next remembered being in the hospital where he had been taken by ambulance.

New Jersey State Police Trooper Miller was called as plaintiffs' witness. He testified that he was patrolling the Turnpike between Exits 8 and 9, and that as he approached Milepost 75, northbound, he came upon a "back-up" of traffic. He said that the traffic was "rather heavy" at this time (7:15 A. M.) as it was the rush hour of the morning, and that the "fog was heavy" and the roadway was damp. He saw a man standing in the roadway waving a red flare. He stopped immediately, turned on his red lights, and investigated the cause of the traffic tie-up which, he found out, involved nine vehicles in the accident.

Vehicle No. 1 was a truck owned by Buffalo Wood Products, Inc. and operated by McGraw. McGraw told Miller that he was driving along the center lane when he noticed a vehicle ahead of him slowing down because of the intense fog. He estimated his speed at 30 to 35 miles per hour. His vehicle was struck in the rear by a passenger car and a tractor-trailer loaded with steel. Miller found No. 1 in the center lane in a partial jack-knife position.

Vehicle No. 2 was a Chrysler passenger car owned by Jean Koh and Pun Kien Koh and operated by Robert Koh. This driver told Miller that he was traveling in the center lane behind No. 1, when he noticed it slow down. His car was struck in the rear by two other vehicles which drove his car into the rear of No. 1. He estimated his speed at 30 m.p.h. Miller found the front end of vehicle 2 in contact with the rear of No. 1.

Vehicle No. 3 was a passenger car owned and driven by Summer J. Kunin, not a party to these cases. He told the trooper that he was traveling north in the center lane, that when he noticed traffic had either slowed down, or was stopped ahead, he applied his brakes, pulled to his left, struck the left rear of No. 2 with the front right of his car, and then came to a stop on the median which separated the northbound and southbound lanes of the highway.

Vehicle No. 4 was owned and operated by Joseph Foy, not a party. Foy told the trooper that he was traveling in the

center lane behind No. 3, that, when he noticed the traffic ahead slow down, he applied his brakes and pulled to the left. The right front of his vehicle collided with the left rear of No. 2. He also stopped on the median.

Washburn was the operator of Vehicle No. 5. In his statement to Trooper Miller at the hospital, Washburn stated that as he was traveling north in the center lane he noticed traffic stopped in front of him, "applied his brakes and failed to stop in safety.", and struck the rear of No. 1 with the front left side of his vehicle. (The trooper noted extensive damage to the front and left side of this car which had ended up on the right-hand shoulder of the road north of Vehicle No. 1.)

Vehicle No. 6, owned by Joanne Bundrant, was operated by James L. Ellison, not parties. It was found with its front end in contact with the rear end of No. 2. Ellison estimated his speed at 35 m.p.h.

Vehicle No. 7 was a tractor-trailer, owned by J. Donald Wolfe and operated by Samuel E. Walborn. Walborn told Miller that he was traveling in the right-hand lane, that when he noticed traffic ahead of him, he applied his brakes and moved to the left, struck the right rear of No. 1, and that his trailer was struck in the rear. Trooper Miller found No. 7 parked at a 45-degree angle crossways on the right-hand shoulder, about 15 feet from the Washburn car. Walborn estimated his speed at 35 m.p.h.

Vehicle No. 8 was a tractor-trailer owned by P. & M. Trucking Lessors, Inc., and operated by Woodrow Wilson Pollard, not parties. It apparently collided with the rear of No. 7.

Vehicle No. 9 was a tractor-trailer owned by Davidson Transfer and Storage Company, and operated by Joseph J. Sudbrok, not parties. Trooper Miller found it headed north in the left-hand lane, and not in contact with any other vehicle.

Quinn testified that he awakened when he felt the application of the brakes. He then saw a truck about 30 feet ahead, and an automobile directly behind it. He did not see lights

on these vehicles. He saw Washburn pulling to the right, but he believed Washburn would not miss the vehicles in front of them. At the time of the impact he started to fall over in the seat and remembered nothing more until he awakened and found himself at the side of the road. Quinn stated that the impact was on the left side of the Washburn car with the truck or the car in back of it.

Stackenwalt stated that he also was alerted by the application of the brakes. Through the windshield he, too, saw the same truck and the outline of an automobile in the rear of it. He heard, but did not see, the impact. He ducked, felt an impact, was thrown to the floor and felt the automobile careen around until it came to a stop. He testified that the initial impact was directly in the front, and, on cross-examination, stated that there was a subsequent impact or shove from the rear while Washburn's car was careening from the original point of collision.

Gravinese knew only that he awakened after the accident and was then lying alongside the road.

The Appellate Division asserted that the basic ground for reversal advanced by Washburn was that there was no proof of his negligence, hence, the trial court erred in denying his motions for judgments of involuntary dismissal of the Stackenwalt, Gravinese and Quinn claims. The Appellate Division disagreed with this argument but reversed and remanded for a new trial on the ground that the trial court had committed reversible error in charging the doctrine of *res ipsa loquitur*. We agree with the Appellate Division's view that proof existed in the record from which the jury could find Washburn guilty of negligence but we disagree with its conclusion that the charge on *res ipsa loquitur* was reversible error.

Many issues are briefed and argued on these appeals but our disposition of the *res ipsa loquitur* issue makes unnecessary the resolution of the other grounds. However, because we agree generally with the view expressed in the unpublished opinion of the Appellate Division with the exception of its

treatment of *res ipsa loquitur*, we quote at some length from it. That court stated:

■■ "It is, of course, well settled that where the trial court in denying a motion for dismissal misapplies the law, reversal is not required if a proper ground existed, supportive of the action taken. An appellate court is necessarily concerned with the propriety of the action appealed from rather than of the reasons advanced by the court below in support thereof. *Marchitto v. Central R. Co. of N. J.*, 9 *N. J.* 456, 463 (1952). Thus, in the present case, if evidence, beyond a mere scintilla, was produced which directly or circumstantially was more consistent with defendant's negligence than with the absence of it, the denial of defendant's motions for judgment of involuntary dismissal was not erroneous. From our careful examination of all of the evidence, we find that plaintiffs' case possessed proof of that character.

■ "It is clear, and the trial judge so charged, that defendant was under a duty to exercise that degree of care, caution and vigilance which the existing circumstances fully demanded of a reasonably prudent person. *Kovacs v. Ford*, 108 *N. J. L.* 379, 382 (*E. & A.* 1932). Thus, the operator of a motor vehicle in a fog which limits his visibility is under a special and greater degree of care commensurate with the increased danger. *Ball v. Camden and Trenton Ry. Co.*, 76 *N. J. L.* 539, 541 (*E. & A.* 1909); *Cordis v. Vanderbilt*, 7 *N. J. Misc.* 856, 857–8, 147 *A.* 464 (*Sup. Ct.* 1929); Annotation, 'Liability for motor vehicle accident where vision of driver is obscured by smoke, dust, atmospheric condition, or unclean windshield,' 42 *A. L. R.* 2*d* 13, 38 (1955).

\*       \*       \*       \*       \*       \*       \*

"[T]here can be no doubt that the question of negligence in each case may properly be left to the jury with the general instruction, already noted, of reasonable care under existing circumstances. Questions of proper speed and control of a vehicle are pre-eminently questions of fact for the jury to determine. *Cohen v. O'Brien*, 3 *N. J. Misc.* 125, 126, 127 *A.* 321 (*Sup. Ct.*), affirmed o. b. 102 *N. J. L.* 215 (*E. & A.*

1925); *Murphy v. Terzako*, 14 *N. J. Super.* 254, 259 (*App. Div.* 1951). For example, in *Hamilton v. Althouse*, 115 *N. J. L.* 248 (*E. & A.* 1935), defendant was driving his automobile at 35 m.p.h. on a country road, at night, with his headlights turned down to the ground so that he could see only 25 feet ahead of the vehicle. Defendant struck and killed plaintiff, who was walking by the side of the road. The court held that whether or not defendant adequately anticipated and looked for a pedestrian under these circumstances 'was a question for the jury to determine.' (at *p.* 250)

"Turning to the present case, we find that the jury could reasonably have inferred the probability of defendant's negligence from the * * * facts.

\* \* \* \* \* \* \*

"Even assuming the truth of defendant's testimony that he was traveling under the posted speed limit at the time of the accident, there was sufficient evidence to submit the question of negligence to a jury. As noted, defendant testified that he entered a heavy bank of fog at 35 m.p.h. By his own testimony, defendant had only 30 feet to travel after he observed the preceding vehicle until the collision. Kunin, the driver of car No. 3 and a disinterested witness since he was not a party, testified graphically that 'as I approached the accident it was a very heavy fog, driving was dangerous, \* \* \*. There is only once that I ever had been in a thicker fog, and that was in a fog where you couldn't travel.' A jury question was, therefore, created as to whether or not defendant was negligent in driving into a thick fog bank at 35 m.p.h.

"Furthermore, defendant's negligence may be inferred —regardless of his speed—from his inability to stop before the extremely severe impact. Trooper Miller testified that defendant's car traveled 80 feet after the initial impact. Stackenwalt testified:

'I was thrown into the floor of the car with the impact, and we careened around, like being in a drum, I guess, going over Niagara Falls, you don't know where you are going, and eventually the car came to rest.'

■ "Quinn testified that he was awakened by the application of the brakes and saw the halted vehicles blocking the road. He stated, 'Mr. Washburn was pulling to the right. I din't think he was pulling enough.' Thus, the sudden application of the brakes, the inability of the driver to avoid the stalled vehicles, the extensive damage to defendant's automobile, and the severe injuries suffered by the passengers create an inference that defendant was traveling at an excessive speed and lacked the requisite control over his automobile.

■ "It is significant to note that defendant testified that, as he was slowing down, 'I was struck in the rear and I seemed to strike something in the front.' This version of the facts would seem to indicate that defendant was properly reducing his speed when he was hit from behind and pushed into the preceding vehicles. On the other hand, Trooper Miller testified that although defendant's car had 'extensive damage to the front and left side' he did not notice any damage to the rear. None of the passengers testified that defendant's automobile was struck from behind. Quinn stated that the impact came from 'the left side' of the car; and Stackenwalt, 'in the front.' The inferences to be drawn from this conflicting testimony were properly left to the jury's determination."

However, the Appellate Division held that the trial court committed reversible error because it referred to the "doctrine" of *res ipsa loquitur* in its charge and that thus the jury's mind was exposed to a doctrine that had no place in a proper resolution of the evidence, that it was entirely probable that the *res ipsa loquitur* instruction led the jury to return the verdict it did, thus infecting the result and requiring a retrial. As stated above, we disagree with the Appellate Division's conclusion on this issue.

■ A charge must be considered as a whole, and if the law is stated in such manner that jurors would not fail to understand the instructions or be confused, the charge is not erroneous. *Ristan v. Frantzen,* 14 *N. J.* 455, 461 (1954). In *Vadurro v. Yellow Cab Co. of Camden,* 6 *N. J.* 102, 107–8

(1951), we pointed out that this is so even though part of the charge, standing alone, might be regarded as erroneous. The test is how and in what sense, under the evidence, would jurors understand the instructions as a whole and if it is clear that the jury would not be misled, the charge cannot be prejudicially erroneous. *Cf. Board of Education of City of Asbury Park v. Hoek*, 38 *N. J.* 213, 228 (1962). Thus, even though it might be error to charge *res ipsa loquitur*, it is not necessarily reversible or prejudicial error.

We refer to the trial court's charge in some detail. After preliminary remarks concerning the general principles involved and the different functions of court and jury, it charged:

"* * * [T]he law places upon the plaintiffs the burden of satisfying you by the greater weight of the believable testimony as to the truth of their allegation, namely, there was negligence on the part of the defendant, and such negligence was a proximate cause of the injuries which they sustained. To put it another way, the burden is upon the plaintiffs to establish the defendant's negligence by the preponderance of the evidence."

Then, it pointed out that there are three things with which the plaintiffs are burdened in any negligence case in order to recover.

"First it must be proved that plaintiffs were injured. Second, that the injuries were caused by the negligence of the defendant. And, third, that such negligence was a proximate cause of those injuries. These things the plaintiffs must prove by a preponderance of the evidence, or, to say it another way, by the greater weight of the believable testimony, before they can recover."

In the very next paragraph, it reiterated that:

"It is the duty of the plaintiffs to establish that the defendant failed in a duty which he owed to the plaintiffs, and, in addition, that the negligence of the defendant in that respect was a proximate cause of the injuries to the plaintiffs."

It then referred to *res ipsa loquitur* stating:

"It symbolizes a permissible presumption of negligence from the plaintiffs' proof; * * *. The rule has its foundation in proba-

bility and the procedural policy of placing the onus of producing evidence upon the party who is possessed of superior knowledge or opportunity for explanation of the causative circumstances. The presumption arises where the circumstances furnish reasonable grounds for the inference that if due care had been practiced by the person having control of the instrumentality causing the injury, the mishap would not have occurred. If the circumstances are such as will, unexplained, sustain the inference of negligence as reasonably probable, a *prima facie* case is made, and the issue goes to the jury."

But immediately thereafter it again referred to plaintiffs' obligations:

"But the burden of persuasion is not thereby shifted; the inference is still one for the jury and not for the Court, and the jury may reject it as not of such quality as would move reasonable men to judgment in favor of the tendered hypothesis, even when there is no explanation by the defendant. The most that is required of the defendant is explanation, not exculpation; and where there is an explanation, it is for the jury, as in the ordinary case, to determine the facts and the inferences to be drawn from all the circumstances."

Once again, it stressed plaintiffs' burden after pointing out that the mere happening of a collision does not necessarily or automatically insure a recovery by the person who instituted the suit, nor does it raise any presumption of negligence on the part of the defendant:

"Before the plaintiffs are entitled to recover they must prove some negligent act, and while proof of a certainty is not required the evidence must be such as to justify an inference of probability, as distinguished by a mere probability of an act on the part of the defendant. Negligence and the legitimate inference of its existence must be established by competent proof."

From our analysis of these quoted parts, we conclude that the charge clearly emphasized that plaintiffs' burden of persuasion was not shifted, that the inference was still one for the jury, that the jury could reject any such inference even if no explanation were tendered by defendant, that, at most, the defendant is required to explain, not exculpate himself, and that when an explanation is tendered, it is for the jury to determine the facts and the inferences to be drawn from all the circumstances. The charge in its

entirety focuses in proper perspective the basic principles in the proof of a cause of action based upon defendant's alleged negligence.

A somewhat similar case was *Plant v. River Road Service Co.*, 5 *N. J. Super.* 290 (*App. Div.* 1949). There the actions stemmed from a collision between an automobile operated by Plant and a truck operated by one, Wetmore. Plant was driving in an easterly direction on Newark Turnpike and Wetmore was going in a westerly direction. Plant attempted to pass a truck traveling in the same direction as he when he saw Wetmore's truck, about 200 feet away, coming toward him head on in Plant's lane. He then tried to drop behind the truck alongside of which he was riding but could not do so, swerved over to the left side of the road and collided with Wetmore. After the collision, Wetmore's truck was off the road and Plant's was in about the center of the road facing the opposite direction to which he had been traveling. The court referred to the appellants' contention that the court's charge concerning the doctrine of *res ipsa loquitur* was harmful error and stated:

"* * * We do not feel that the court committed *prejudicial* error. From a careful review of the entire charge, it is evident that the court did not mandatorily charge that the doctrine applied and that, *prima facie*, Plant was negligent. On the contrary, the charge stated that the sudden swerving of Plant's car was a circumstance which had to be explained by Plant and which Plant did, in fact, explain.

The mere fact that the court charged the doctrine of *res ipsa loquitur* is not of itself sufficient to create *prejudicial* error. It is first necessary to determine from a reading of the entire charge whether or not harmful error was committed.

The court below indicated that the burden of proof of negligence is upon him who asserts it. The court based its entire charge upon the correct proposition of law that the jury must find negligence of a party in order to return a verdict against that party. The court left the issue of negligence to the jury." (Emphasis of "prejudicial" ours)

It concluded that there was "no harmful error" in that part of the charge concerning *res ipsa loquitur*.

The case before us is not a classical one of *res ipsa loquitur* in that it does not involve a single instrumentality within the control of the defendant. Nonetheless, we have here a type of event which does not ordinarily occur without negligence on the part of one situated as was Washburn. What we mean is that a driver is obligated to maintain a reasonably safe distance behind the car ahead and usually he is at fault if he collides with that car. There may, of course, be facts within the special knowledge of the defendant driver in the light of which an inference of negligence would be unwarranted. In essence the trial court's charge said no more than this despite the reference to *res ipsa loquitur*. What remained very clear was that the burden of persuasion was and remained with plaintiffs and that the jury could but need not find for plaintiffs on the total proof.

We accordingly conclude that the judgment in favor of plaintiffs against Washburn should be affirmed. This conclusion disposes of Washburn's claims for his own damages against the other defendants. We find also that there was no evidence of negligence on the part of Buffalo, McGraw and the Kohs and we agree with the Appellate Division that there was no evidence of negligence on the part of the remaining defendants.

It follows that the judgments entered in the trial court are affirmed and the judgments of the Appellate Division are modified accordingly.

PROCTOR, J. (dissenting). I would affirm the judgment of the Appellate Division for the reasons stated therein by Judge Freund. Writing for the majority, he said that *res ipsa loquitur* was improperly applied by the trial judge and that it was harmful error to charge the jury respecting the doctrine. Judge Foley, who dissented on the ground that there was no evidence of Washburn's negligence, agreed with the majority that the court committed harmful error in charging on the doctrine.

There may be motor vehicle collision cases where a charge of the *res ipsa loquitur* doctrine although improper would not be prejudicial. However, in my view this is not such a case. Here nine vehicles were involved on an extremely foggy day; Washburn's vehicle was fifth. The trial judge charged: "There is an additional rule of evidence which you *must* consider in this case, due to the circumstances under which this accident happened. That is known as *res ipsa loquitur*—the thing, or affair, speaks for itself." (Emphasis supplied.) Washburn was the only defendant left in the case when it was submitted to the jury. While he had exclusive control of his vehicle, he had no control of the other circumstances which may have caused plaintiffs' injuries. This charge permitted the jury to find the defendant negligent from the mere happening of the accident where the evidence did not indicate that all of the circumstances essential to the occurrence were within his exclusive control. I would not permit the trial judge to instruct the jury that a nine-car pile-up in a dense fog bespeaks negligence on the part of the driver of the middle car. The fact that the trial judge told the jury that the plaintiffs had the burden of proof in no way dilutes the harm. Even where the doctrine of *res ipsa loquitur* applies a plaintiff has that burden. *Lorenc v. Chemirad Corp.*, 37 *N. J.* 56, 71 (1962). In addition, the charge was contradictory since it put the issue of negligence to the jury in the usual manner along with the doctrine of *res ipsa loquitur* and, as a whole, was bound to confuse and mislead rather than enlighten the jury. Further, I agree with the Appellate Division that there was sufficient evidence of negligence on the part of Buffalo, McGraw, and the Kohs to be submitted to the jury.

Justice HALL joins in this opinion.

*For modification*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, SCHETTINO and HANEMAN—5.

*For affirmance*—Justices PROCTOR and HALL—2.