86 N.J. Super. 323 (1965)
206 A.2d 890
MICHAEL ARDIS AND DANIEL EILE, PLAINTIFFS-APPELLANTS,
v.
CARLTON THOMAS REED, A/K/A CARLTON REED, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 26, 1964.
Decided January 25, 1965.
*326 Before Judges GAULKIN, FOLEY and COLLESTER.
Mr. Howard A. Goldberger argued the cause for appellants (Messrs. Goldberger, Ostrow, Seigel & Finn, attorneys).
Mr. George P. Moser, Jr., argued the cause for respondent (Messrs. Moser, Roveto & McGough, attorneys).
The opinion of the court was delivered by COLLESTER, J.A.D.
In this automobile negligence action plaintiffs Eile and Ardis appeal from a judgment of the Bergen County District Court following a jury verdict of no cause for action in favor of defendant Reed. Plaintiffs' motion for a new trial was denied. They contend: (1) the verdict was against the weight of the evidence; (2) the trial court erred in its charge to the jury; (3) the trial court erred in denying plaintiffs' application to reopen the case after defendant had rested; (4) the trial court erred in permitting cross-examination of plaintiffs and comment by defendant *327 in summation relating to their claims for loss of earnings as damages.

I.
We consider first plaintiffs' contention that the verdict was against the weight of the evidence. A brief resume of the material facts is necessary.
It is undisputed that between 3:00 and 3:30 P.M. on December 24, 1959, a truck operated by defendant Reed collided with the rear end of an automobile operated by plaintiff Eile in which plaintiff Ardis was a passenger. The accident occurred on Route 46 in Teterboro, New Jersey. Both vehicles were proceeding westerly in the right-hand westbound lane just prior to the collision. Defendant's truck was immediately behind the Eile car. It is conceded that traffic in the westbound lane of Route 46 was extremely heavy. The remaining facts concerning the happening of the accident are in dispute.
Plaintiff Eile testified that just prior to the accident he had gradually slowed the speed of his vehicle in order to enter an Amoco gasoline service station located on the right side of the highway. He said a side street on his right intersected Route 46 just before the service station; that he intended to drive on the right shoulder of Route 46 and to enter the intersecting street on his right in order to cross into the side entrance of the service station. He stated that as he approached the intersection he saw the automobile of a woman motorist stopped on the intersecting street facing south towards Route 46, blocking the side entrance of the service station. He stopped his car for about a minute to permit the woman motorist to enter Route 46. He testified that after the woman motorist had entered the highway and headed west, his car was struck in the rear by defendant's truck. He said his motor vehicle was propelled west on the highway, past the intersecting street, and came to rest in front of the service station. Eile testified that his directional signal indicating a right turn had been on for "over a block" before he came to a stop; that his stop lights were operating, and that he had *328 indicated his intention to stop by signalling with his left hand extended from the car window. He said there was no snow or ice on the highway. Eile admitted that he made no observation of traffic to the rear of his vehicle, either while slowing down or stopped. He did not see defendant Reed's truck before the impact. Following the collision, while license information was being exchanged, Eile claimed he smelled a strong odor of liquor on Reed's breath.
Eile's version of the accident was corroborated by plaintiff Ardis, who was riding in the right front seat of Eile's car. Ardis also did not see defendant's truck before the collision.
Defendant's version of the accident is in direct conflict. He said he had been following the Eile car in heavy traffic for several miles at a speed of 5 to 10 M.P.H. and at a distance of 5 to 10 feet from its rear. He described the pavement as icy and wet. Defendant testified that when plaintiffs' automobile arrived at the gasoline service station it came to a sudden stop; that he immediately applied his brakes but slid into the rear of the Eile car due to the icy pavement. He said the lady motorist, referred to by plaintiffs, was not in an intersecting street because there was no intersecting street at this point of the highway. He said she was parked on the premises of the service station, "waiting to come out." He alleged that she did not come out of the service station and enter Route 46 until after the collision, which propelled the Eile car a distance ahead of 6 or 7 feet. He said that, after the impact, he had to back his truck up on Route 46 in order for the motorist to enter upon the highway between Eile's car and his truck. He testified that he was driving in third gear (there are five gears on the truck) at the speed of 5 to 10 M.P.H. immediately before the collision, and that he braked his truck when he saw plaintiff's stop lights go on and the Eile car stopped. He said he did not observe plaintiff's directional signal or hand signal. He denies he had been drinking, stating he had not touched alcohol since "1945, in Okinawa."
Both plaintiffs claimed neck injuries, commonly referred to as "whiplash." Both said they were required to wear cervical *329 collars for months after the accident. Both had sustained similar injuries in prior accidents and claimed the accident of December 24, 1959 aggravated such injuries. Ardis said he visited a doctor on the day of the accident and was examined once by Dr. Paul Glicksman on December 31. Twenty months later he was treated by Dr. Arthur Solk, who had been his physician for his prior injuries. Eile testified that after the accident he went to Valley Hospital where he received emergency treatment, and returned to the hospital on the following day when he was given medication for pain. He was treated by Dr. Glicksman on six occasions between December 26, 1959 and February 4, 1960. He said thereafter he was treated by Dr. Robert Borodkin for several months (Dr. Borodkin did not appear as a witness at the trial). Both Dr. Glicksman and Dr. Solk testified that in their opinions the injuries sustained in the prior accidents had been aggravated.
The verdict of the jury may not be set aside as against the weight of the evidence unless it clearly and convincingly appears that it was the result of mistake, partiality, prejudice or passion. R.R. 4:61-1; Wytupek v. City of Camden, 25 N.J. 450, 466 (1957). We may not disturb the action of the trial court in granting or denying a motion for a new trial "unless it is clearly manifest that the action of the trial court was without basis in law, or fact, or both, with the result that there was a denial of justice under the law." Hartpence v. Grouleff, 15 N.J. 545, 548 (1954); Hickman v. Pace, 82 N.J. Super. 483, 488 (App. Div. 1964). R.R. 1:5-3(a), made applicable to this court by R.R. 2:5, delineates our scope of review. We, too, may not set aside a verdict as against the weight of the evidence unless, having given due regard to the opportunity of the trial court and the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that the verdict was the result of mistake, partiality, prejudice or passion. Varlaro v. Schultz, 82 N.J. Super. 142, 153 (App. Div. 1964). The limited scope of our appellate review in passing upon the propriety *330 of the jury's verdict and the trial court's denial of a new trial has been clearly set forth in Kulbacki v. Sobchinsky, 38 N.J. 435, 446, 452 (1962).
In the instant case there was sharp conflict of testimony on many points with regard to the happening of the accident. The credibility of the witnesses was a major factor in the jury's determination. The jury could have determined from the facts that defendant was not guilty of negligence; that he exercised reasonable care in the operation of his motor vehicle under the circumstances that prevailed. It could have determined that plaintiff Eile was solely negligent in bringing his motor vehicle to a sudden stop, admittedly without having made an observation of traffic immediately behind his vehicle. Then, too, the jury could have determined that neither plaintiff sustained injuries which were proximately caused by the collision. Watkins v. Myers, 12 N.J. 71, 74-75 (1952); Murphy v. Terzako, 14 N.J. Super. 254, 260-261 (App. Div. 1951).
Plaintiffs argue that the jury "completely ignored the unrebutted evidence of the plaintiffs' experts as to the fact that each of the plaintiffs sustained injury," and that the "total disregard of the plaintiffs' medical testimony, the credibility of which stands unimpeached, is of itself ground for a new trial." It is true that defendant did not produce any medical witnesses to refute plaintiffs' testimony. However, it is clear from the record that defendant did not concede that plaintiffs sustained injuries in this accident, and he subjected all witnesses to cross-examination designed to nullify plaintiffs' contentions. In Ferdinand v. Agricultural Ins. Co. of Watertown, New York, 22 N.J. 482 (1956), the court said,
"Where men of reason and fairness may entertain differing views as to the truth of testimony, whether it be uncontradicted, uncontroverted or even undisputed, evidence of such a character is for the jury." (at p. 494)
The evidence in this case was fairly susceptible of divergent inferences. As before stated, credibility was a major *331 issue. Applying the pertinent rules and the construction given them by our appellate courts, we find that the verdict was not against the weight of the evidence and there was no error in the denial of a new trial.

II.
Plaintiff Ardis contends that the trial court erred, after charging the jury that the defense of contributory negligence did not apply in Ardis' suit against Reed by stating,
"If you should find that the driver of the car [Eile] in which the plaintiff [Ardis] was a passenger was negligent, and that the defendant was negligent at the time of the accident, which negligence concurred proximately in producing the plaintiff's injuries, then the plaintiff Michael Ardis can recover from the defendant Reed."
Ardis argues such language was erroneous because it required both drivers to be found negligent before he could recover. An examination of the charge indicates that subsequently the court instructed the jury that it could bring in a verdict "for both plaintiffs against the defendant or you can find for one plaintiff against the defendant, based on the evidence." (Emphasis added) A charge must be considered as a whole, and if the law is stated in such manner that jurors would not fail to understand the instructions or be confused, the charge is not erroneous. Stackenwalt v. Washburn, 42 N.J. 15, 26 (1964); Ristan v. Frantzen, 14 N.J. 455, 461 (1954). We find no error in such instructions.
The court included in its charge a reading of parts of R.S. 39:4-89 and N.J.S.A. 39:4-126 relating to traffic regulations. Section 89 provides that the driver of a vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard to the speed of the preceding vehicle and the traffic upon, and the condition of, the highway. Section 126 refers to the duty of the driver to signal before starting, turning or stopping his motor vehicle on the highway. The court read a substantial part of section 126, which provides that no driver shall stop or suddenly decrease *332 the speed of his vehicle without giving an appropriate signal to the driver of any vehicle immediately to his rear, viz., hand and arm extended downward or by an approved electrical signal device. He informed the jury that an operative stop light was a proper device. He also included in his reading of section 126 that part of the statute which refers to signals required to be given when a turn is to be made at an intersection, viz., a hand signal or an electrical signal device (such as a directional signal light). He further told the jury that a mere violation of the statutes did not of itself constitute negligence, but that such a violation could be considered in determining whether either Eile or Reed was negligent.
Plaintiffs objected to the trial court's reading of that part of section 126 which referred to signals required of a driver when a motor vehicle is turned at an intersection. It is argued that the trial court thus introduced an element and issue which was not part of the case.
Plaintiff Eile testified that he brought his motor vehicle to a stop in the right-hand lane because he was going to "cut into the entrance of the gas station on that side block" but was prevented from doing so because of the presence of the motor vehicle on the side street operated by the lady motorist. He said his directional signals, indicating an intention to turn right, had been on for "well over a block." As before stated, defendant's version of the accident was that Eile had made a sudden stop on the highway near the service station.
The trial court told the jury that both plaintiffs and defendant testified as to their respective versions of the collision. Pointing out that there was a conflict in the testimony, the court informed the jury that they "must determine the facts, the truth in this case."
Since Eile made no attempt to turn into an alleged side street, that part of section 126 relating to signals required of a driver while turning could well have been omitted from the court's charge. (However, as noted above, Eile testified that he had given such a signal.) We find no prejudicial error here. "The acid test is, would the jury be misled?" *333 Middleton v. Public Service Co-Ordinated Transport, 131 N.J.L. 322, 323 (E. & A. 1944). A charge must be considered as a whole. Stackenwalt v. Washburn, supra, 42 N.J., at p. 26. When the court's charge, considered as a whole, presents the law fairly and clearly to the jury, there is no ground for reversing the judgment, though some of the expressions, when standing alone, might be regarded as erroneous. Vadurro v. Yellow Cab Co. of Camden, 6 N.J. 102, 107 (1950); Stackenwalt v. Washburn, supra, 42 N.J., at pp. 26-27. We are satisfied in the instant case that the jury was not misled by the court's instructions. It was well aware that the issue of negligence involved a collision which occurred when Eile's motor vehicle was stopped on Route 46.
Plaintiffs next urge that the court's charge denied them the right to recover damages for temporary injuries and required that the jury find they had sustained permanent injuries before they could recover. Plaintiffs did not object to that portion of the charge concerning injuries or damages in the trial below. Thus, any alleged error relating thereto will not be considered by this court. R.R. 4:52-1. See Lippman v. Ostrum, 22 N.J. 14, 26 (1956); Troast v. Lascari, 59 N.J. Super. 110, 117 (App. Div. 1960). We note in passing, however, that our examination of the charge as a whole indicates that this point is without merit.
The court charged the following portion of a request to charge submitted by plaintiffs,
"The defendant here is not entitled to benefit by payments made to the plaintiff from collateral sources. In this case, monies paid out of the vacation and retirement fund."
The court refused to charge the remaining portion of the request which stated,
"It may be said that the defendant deserves to be made to pay in full because of the moral quality of his act."
Plaintiffs allege such refusal was error. We disagree.
*334 A party to an action is not entitled to have the jury charged in words of his own choosing, and, when the charge as a whole clearly and correctly states the principles of law pertinent to the issues in the case, there is no error in this respect. Batts v. Joseph Newman, Inc., 3 N.J. 503, 511 (1950); Wyatt v. Curry, 77 N.J. Super. 1, 10 (App. Div. 1962). In the instant case, the court charged the principle of law involved. The deleted portion of the request might well have confused the jury and prejudiced defendant.

III.
Plaintiffs also allege error by the trial court in (1) denying their application to reopen their case after the defense rested to show they had been examined by defendant's doctor who had not testified, (2) permitting cross-examination of plaintiffs concerning their claims for loss of earnings. Both points pertain to plaintiffs' claim for damages and the jury having determined there was no liability, it is unnecessary to pass on such issues.
We also note, in passing, that the first point relates to a matter of discretion for the trial court. Vogel v. North Jersey St. Ry. Co., 69 N.J.L. 219 (Sup. Ct. 1903). We see no abuse of discretion here. As to the second point, we conclude that defendant was entitled to cross-examine on plaintiffs' claimed loss of wages, if only to attack plaintiffs' contention that they were unable to work as claimed.
The judgment of the Bergen County District Court is affirmed.
GAULKIN, S.J.A.D. (dissenting).
With the greatest respect for the opinion of my brothers, I find myself unable to agree that "the jury could have determined from the facts that defendant was not guilty of negligence, that he exercised reasonable care in the operation of his motor vehicle under the circumstances that prevailed." If that was the verdict of the jury, I think it was "clearly and convincingly * * * the *335 result of mistake, partiality, prejudice or passion." R.R. 1:5-3(a).
As the majority opinion says, "defendant had been following the Eile car in heavy traffic for several miles at a speed of 5 to 10 m.p.h. and at a distance of 5 to 10 feet from its rear. He described the pavement as icy and wet." That, to me, indisputably spells negligence.
At 5 m.p.h. a vehicle travels over 7 feet per second; at 10 m.p.h., over 14 feet. In addition, allowance must be made for reaction time. In Fisher, Vehicle Traffic Law, published by the Traffic Institute of Northwestern University in 1961, the author says (p. 431): "In the offense of following too closely the element of distance traveled during the driver's reaction time is often the key to the situation. It has been judicially recognized that the reaction time of the average driver is about three-quarters of a second."
In Wiebe v. Seely, 215 Or. 331, 335 P.2d 379, 395 (1959), the Oregon Supreme Court said:
"* * * We recognize the fact of `reaction time,' that is, the time that elapses `from the moment one sees danger until * * * he can actually get into action to avoid it.' Ashbrook v. Cleveland Railway Co., Ohio. App., 34 N.E.2d 992, 994. See Tuite v. Union Pacific Stages, Inc., 204 Or. 565, 593, 284 P.2d 333. Several courts have held that in the absence of affirmative proof on the subject this time will be presumed to be 3/4 of a second. Standard Oil Co. v. Crowl, 8 Cir., 198 F.2d 580; Vietmeier v. Voss, Mo., 246 S.W.2d 785; DeLay v. Ward, 364 Mo. 431, 262 S.W. 2d 628; McKinney v. Robbins, Mo. App., 273 S.W.2d 513; Ashbrook v. Cleveland Railway Co., supra. In Kaan v. Kuhn, 64 Wyo. 158, 187 P.2d 138, 143, the court said that it was `common knowledge that at least half a second after danger appears is required for the average motorist to transfer his foot from accelerator throttle to brake.' In Seeds v. Chicago Transit Authority, 342 Ill. App. 303, 96 N.E.2d 646, 648, the reaction time was said to be `at least a second.' We also think it is common knowledge that a car will `travel some distance while the driver was putting on his brakes and while the brakes were taking hold with sufficient grip to skid the wheels.' State for Use of Stehley v. Belle Isle Cab Co., 194 Md. 550, 71 A.2d 435, 436. * * *."
Even allowing for reaction time less than three-quarters of a second, I doubt that any motorist driving 5 M.P.H. can stop *336 his vehicle within 5 feet after perceiving the need to stop, or within 10 feet if he be driving 10 M.P.H., even on dry pavement. It may be argued that the evidence here is susceptible of the interpretation that just before the collision defendant was going 5 M.P.H. and was 10 feet behind the Eile car, but against that is the fact that defendant himself said the pavement was wet and icy. It seems to me that on such pavement defendant was clearly negligent even if he were 10 feet behind and going 5 M.P.H., and a verdict to the contrary would be grossly against the weight of the evidence.
In that connection, I think the trial judge erred in his charge to the jury. He said (referring to R.S. 39:4-89):
"Another motor vehicle statute * * * may be applicable, and I will read the part that is pertinent. The driver of a vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard to the speed of the preceding vehicle upon and the condition of the highway. * * * Now, members of the jury, under our law the mere violation of a statute governing the operation of a motor vehicle does not of itself necessarily constitute negligence, but may be considered by the jury under the particular circumstances in determining whether either the plaintiff or the defendant were negligent. * * *." (Emphasis added)
I think the trial judge should have charged the jury that if defendant did follow "more closely than is reasonable and prudent, having due regard to the speed of the preceding vehicle upon and the condition of the highway," that constituted negligence. Instead, he told the jury that even if they found those to be the facts, they could find the defendant not negligent. This, I think, was error.
Where the statutory language states that which even in the absence of a statute constitutes negligence, it seems to me error to tell the jury to apply a different rule to those facts simply because of the existence of a statute which makes those facts a violation of the Motor Vehicle Act. For example, if the evidence in a case showed that the defendant drove "carelessly * * * in a manner so as to endanger" plaintiff, which is in violation of N.J.S.A. 39:4-97, I think it would be *337 error to instruct the jury that such driving "did not of itself necessarily constitute negligence." It would still be for the jury to decide proximate cause, contributory negligence and the other issues, but the question of negligence would be settled if the jury found defendant drove "carelessly * * * in a manner so as to endanger" the plaintiff.
There was no objection to this portion of the charge, and plaintiffs do not urge it as plain error, but I think it may have contributed to the erroneous verdict.
For the foregoing reasons I would reverse and order a new trial, and say that in the new trial the jury should be instructed that following another vehicle more closely than is reasonable and prudent, having due regard to the speed of the preceding vehicle and the traffic upon and the condition of the highway, is negligence.
Defendant contends that Eile stopped suddenly, but if defendant was following more closely than was reasonable and prudent, Eile's allegedly sudden stop would relate only to the issue of his contributory negligence. As to defendant's negligence, the very test of what is "reasonable and prudent" in following another car is whether "he can stop in case of emergency without striking the other vehicle." Fisher, op. cit. supra, at p. 432.
Fisher cites Matthews v. Mound City Cab Co., 205 S.W.2d 243, 249 (Mo. Ct. App. 1947), in which the court said:
"While manifestly no absolute rule can be laid down with respect to how closely one automobile may follow another, common sense would dictate, and it seems to be universally accepted, that the distance between the two should be sufficient to enable the driver of the rear automobile to avoid a collision in the event of a sudden stop by the automobile ahead. 42 C.J. 950. In other words, notwithstanding the duty of the driver of the front automobile to give a timely warning of his intention to stop, there is imposed upon the driver of a rear vehicle the corresponding duty to operate his automobile in such a position, and to have it under such control, as to be able to stop or take other appropriate measure to prevent running into the car ahead in case the latter, for any reason, comes to a sudden and unexpected stop."
*338 Fisher quotes also the following from Russell v. Furniture Renewal, Inc., 177 Tenn. 525, 151 S.W.2d 1066, 1068 (Sup. Ct. 1941):
"* * * it is a well-known fact that in a long, slow-moving line of vehicles the procession is likely to come to a sudden stop at any time; and it is therefore the duty of an operator of an automobile to have his vehicle under such control and at such a distance from the car ahead of him that when such sudden stop is made he can bring his machine to a standstill without striking the one immediately in front of him."
Furthermore, it seems to me that the court should have charged the jury that the doctrine of res ipsa loquitur applied to the case at bar, i.e., "that from the evidence introduced by the plaintiff as to the manner in which the accident happened, they may infer causative negligence on the part of the defendant." Cf. Vespe v. DiMarco, 43 N.J. 430, 439 (1964). On the contrary, the judge charged the jury that "Neither negligence nor contributory negligence is ever presumed, but each must be proved by the evidence" and "A party is not entitled to recover damages solely because there has been an accident."
As Justice Francis said in Vespe, supra, at p. 437, quoting from Rose v. Melody Lane of Wilshire, 39 Cal.2d 481, 247 P.2d 335 (Sup. Ct. 1952), "The doctrine of res ipsa loquitur concerns a type of circumstantial evidence upon which plaintiff may rely to discharge his burden of proving defendant's negligence * * *." Justice Francis stated:
"This is not to say the jury would be compelled to infer that defendant was negligent in the operation of his car and so caused plaintiff's injury. But plaintiff was entitled to the advantage of the inference, the prima facie case it presented and the right not to have it affirmatively excluded from the consideration by the jury * * *." (at pp. 436-437)
It seems to me that cases such as Wallach v. Lightening Electric Co., 10 N.J. Misc. 954, 161 A. 680 (Sup. Ct. 1932), and Fine & Jackson Trucking Corp. v. Lehigh Valley R.R. *339 Co., 110 N.J.L. 385, 389 (E. & A. 1933), stand only for the proposition that following closely does not constitute negligent conduct per se, and ordinarily the question whether it was so close as to constitute negligence under given circumstances is for the jury. However, see Vespe, supra; Cermak v. Hertz Corp., 53 N.J. Super. 455 (App. Div. 1958), affirmed o.b. 28 N.J. 568 (1959); Stackenwalt v. Washburn, 42 N.J. 15, 30 (1964); Smith v. Rawlins, 253 N.C. 67, 116 S.E.2d 184, 85 A.L.R.2d 609 (Sup. Ct. 1960); Annotation 85 A.L.R.2d 613 (1962).
Assuming that no New Jersey case has as yet approved a charge of res ipsa in rear-end collision cases, it seems to me that the time has come to do so in cases such as the one at bar, in which the collision was in broad daylight and for no apparent reason except that which came from the lips of the defendant. The 1964 edition of Accident Facts, published by the National Safety Council, shows (at p. 48) that following too closely causes more accidents than driving under the influence of intoxicating liquor. In fact, it was the third most frequent cause of all accidents in 1963 (13.2%), being exceeded only by failing to yield the right of way (18.2%) and speeding (17.5%). During the same period, drunk driving caused 8.1% of all accidents.
The New Jersey Division of Motor Vehicles advises us that it does not "compile this specific type of information for all accidents," but, out of the total of 954 fatal accidents thus far recorded for the year 1964, 74 were "same direction" accidents. The New York Times on October 21, 1964 reported that the United States Bureau of Public Roads has begun a study of "tailgating" because "tailgating has become a leading cause of highway accidents." The Times said that New York lists tailgating as the largest single cause of accidents, accounting for about 25% of all car mishaps, and it quoted the head of the Accident Prevention Department of the Association of Casualty and Surety Companies as saying: "following too closely may prove to be the most popular epitaph of the '60's."
*340 Defendant argues that, even if he were negligent, the verdict of the jury should be supported on the basis that the jury did not believe plaintiffs had suffered any compensable injuries. For this proposition defendant cites Watkins v. Myers, 12 N.J. 71 (1953), Kovacs v. Everett, 37 N.J. Super. 133 (App. Div. 1955), certification denied 20 N.J. 466 (1956), and Murphy v. Terzako, 14 N.J. Super. 254, 260 (App. Div. 1951). See also Brendel v. Public Service Electric & Gas Co., 28 N.J. Super. 500 (App. Div. 1953). However, those cases stand for no more than this: when the jury finds a defendant negligent and still returns a verdict of no cause for action, it must be on the basis that plaintiff failed to prove damages, and, if the evidence shows that indeed the jury could have concluded that the plaintiff suffered no, or only minor, injuries, the judgment should be affirmed. It seems to me that those cases have no bearing upon cases such as the one at bar, for here we cannot tell whether the jury found no negligence or no damages. The photographs show that the impact was substantial and, even though plaintiffs very likely exaggerated their injuries, we cannot assume that the jury would not have awarded either of them anything had it found defendant negligent.
It may be argued that the jury may have found Eile was contributorily negligent, but that would not account for the verdict against Ardis. Furthermore, defendant's testimony that Eile stopped "suddenly" was a mere conclusion seemingly belied by defendant's own statement that he saw defendant stop and that he had time to put on his brakes but his car skidded on the ice.
For the foregoing reasons, I vote to reverse and to order a new trial.