FIRST DIVISION

March 17, 2003 

No. 1-01-2818

UNIVERSAL UNDERWRITERS GROUP, ) 

Subrogee of Benoy Motor Sales, ) 

) Appeal from the

Plaintiff-Appellee, ) Circuit Court of

) Cook County

)

)

CATHERINE M. PIERSON, ) 

) 

Defendant-Appellant ) 

___________________________________)

)

(Catherine M. Pierson and ) 

American National Property and )

Casualty Company, ) 

) 

Counterplaintiffs-Appellants; ) 

)

) 

)

Universal Underwriters Group, as )

Subrogee of Benoy Motor Sales, and )

Benoy Motor Sales,            ) Honorable

                             ) James F. Smith

     Counterdefendants-Appellees). ) Judge Presiding.

JUSTICE McNULTY delivered the opinion of the court: 

When an auto dealer allows a customer to drive one of its vehicles and an accident results, Illinois law clearly provides that the dealer's insurer must cover damages inflicted on third parties, notwithstanding any policy language to the contrary.  The parties to the instant appeal ask us to decide whether applicable statutory and contractual principles require the dealer's insurer to defend and indemnify the driver for damages to the dealer's car.  The trial court found no such requirement, and we affirm. 

Plaintiff Universal Underwriters Group, as subrogee of its insured, Benoy Motor Sales, filed an action in the circuit court of Cook County alleging that on December 22, 1999, Benoy had allowed defendant Catherine Pierson to use an automobile owned by Benoy and that Pierson had returned the car damaged.  Universal sought $3,197.95 in compensation for the damage to the car.  Pierson filed an answer admitting that the car was damaged in an accident, but denying any wrongdoing.  At the same time, Pierson and her insurer, American National Property and Casualty Company, filed a counterclaim for declaratory relief against Universal, seeking a determination that Pierson, as a permissive user of Benoy's vehicle, was insured by the Universal policy covering Benoy cars "by terms of the policy and by express operation of law based upon Illinois public policy."  

Universal filed a motion to dismiss the counterclaim "for failure to plead a cause of action."  Universal contended that the language of its policy covering damage to the Benoy vehicle did not include Pierson in its definition of an insured and that Illinois law required its coverage of Benoy to include permissive users only for damages suffered by third parties, not for damages to the Benoy vehicle itself.  The trial court found no basis for Pierson's claims of coverage for damage to the Benoy vehicle and granted Universal's motion, and this appeal followed.

Universal's policy covering Benoy consisted of several "Coverage Parts," each of which constituted a separate contract of insurance, according to the language of the document.  Pierson claims coverage under Part 500 of the policy, in which Universal agrees to pay damages arising out of "Garage Operations or Auto Hazard."  Pierson's focus on this policy section centers on language that includes in the category of covered insureds those drivers using one of Benoy's vehicles with the dealer's permission.

Universal's response to this claim is that Part 500 of the policy covers damages to the person or property of third parties, not to Benoy's own cars.  We agree.  The language of Part 500 of the policy is explicit in this respect; an "Exclusions" section lists numerous items that "This insurance does not apply to," and among them is "personal property, including AUTOS, owned by, rented or leased to, used by, in the care, custody or control of, or being transported by the INSURED."  Since Benoy is clearly an "insured" for purposes of this policy section, and the vehicle in question is an auto owned by the company, we believe that the exception precludes Pierson's claim of coverage for this incident under Part 500.

A different policy section, Part 300, "Auto Inventory," contains terms that are more clearly applicable to the type of loss incurred as a result of Pierson's accident: "We will pay for LOSS of or to a COVERED AUTO from any cause *** ."  Part 300 does not contain an exclusion of the sort that removed Pierson's accident from the coverage of Part 500.

However, Part 300, while covering the type of loss caused by Pierson's accident, lacks Part 500's expansive definition of "Who is an insured."  This section's protections include only Benoy and its "partners, paid employees, directors, executive officers and stockholders," and does not include others driving a vehicle with Benoy's permission.

The Universal-Benoy policy's terms thus provide coverage for the dealer's permitted users for damages sought by injured third parties, and compensation for the dealer for loss to its car, but do not cover the permitted user for damages to the dealer car she drove.

Pierson contends that Illinois public policy overrides the explicit language of the insurance contract and requires that she be protected for the loss to the Benoy vehicle.  In support of this contention, she cites Illinois' mandatory insurance law (625 ILCS 5/7-601 (West 1998)) and various precedents interpreting and defining the extent to which that statute imposes coverage responsibility on the insurer of an auto dealer: 
Browning v. Plumlee
, 316 Ill. App. 3d 738 (2000); 
Country Mutual Insurance Co. v. Universal Underwriters Insurance Co.
, 316 Ill. App. 3d 161 (2000); 
State Farm Mutual Automobile Insurance Co. v. Universal Underwriters Group
, 182 Ill. 2d 240 (1998); 
Universal Underwriters Insurance Group v. Griffin
, 287 Ill. App. 3d 61 (1997); 
Madison Mutual Insurance Co. v. Universal Underwriters Group
, 251 Ill. App. 3d 13 (1993); and 
Pekin Insurance Co. v. State Farm Mutual Automobile Insurance Co.
, 305 Ill. App. 3d 417 (1999).  Pierson argues that the statute and cases stand for the proposition that Illinois public policy "in favor of permissive drivers" requires that she receive coverage under Benoy's insurance policy.  This argument ignores a crucial element of the mandatory insurance statute: it requires vehicle owners to provide "liability" insurance.  625 ILCS 5/7-601 (West 1998).

Courts and legal commentators have reached widespread consensus on the meaning of the term "liability" insurance: "Since the liability policy is, by definition, one of liability to others, and not for personal or property damages sustained by the named insured, there can be no coverage of loss sustained by him or her to his or her person or his or her property when he or she is operating the insured vehicle." 7 L. Russ & T. Segalla,  Couch on Insurance, §110:11, at 110-19 through 110-20 (3d ed. 1997).  "The nature of liability insurance coverage is too well settled to permit quibbling. *** Liability insurance is designed to protect an insured from claims for damages owed to a third person, and not from losses that the insured suffers directly. [Citation.]"  
Mazzaferro v. RLI Insurance Co.
, 50 F.3d 137, 139 (2d Cir. 1995).  See also 
McNeilab, Inc. v. North River Insurance Co.
, 645 F. Supp. 525, 537-38 (D.N.J. 1986); 
Alcorn Bank & Trust Co. v. United States Fidelity & Guaranty Co.
, 705 F.2d 128, 130 (5th Cir. 1983).  Therefore, in accordance with the commonly accepted definition of the term, our legislature would appear to have enacted a provision requiring insurance coverage only for claims advanced by those injured by a driver, and not for the losses of the driver or her vehicle.

This appearance is confirmed by our courts' interpretations of the public policy underlying the mandatory insurance law.  Our supreme court has found that the statute's "principal purpose" was "'to protect the public by securing payment of their damages' [Citations.]."  
State Farm Mutual Automobile Insurance Co. v. Smith
, 197 Ill. 2d 369, 376 (2001)(
Smith
).  In 
Smith
, as in each of the cases cited by Pierson, the party seeking damages was an individual injured by the insured's vehicle, not the insured or its permissive user seeking recovery for injury to his own person or to the insured vehicle.  None of the cases cited by Pierson interpreted the public policy underlying the statute to provide coverage and compensation for losses of the insured or the insured's car.   

It is therefore our view that the public policy expressed by our legislature and interpreted by our courts to date is more narrowly defined than argued by Pierson: it mandates that claims by injured third parties be covered by a car owner's insurance policy, but there is no indication that it extends to require coverage for damages to the insured vehicle while in the control of a permissive user.  Courts of other jurisdictions, interpreting the interplay between their mandatory insurance provisions and insurance policy terms nearly identical to those we review here, have reached the same conclusion.  
Western Motor Co. v. Koehn
, 242 Kan. 402, 748 P.2d 851 (1988).

We conclude that Pierson is not an insured under the terms of the Benoy-Universal policy for damages to the Benoy vehicle and that no apparent public policy of our state mandates such coverage.  This conclusion dictates the disposition of Pierson's next argument: that the principle against an insurer's maintenance of a subrogation action against its own insured prohibits Universal's claim against her.  In 
Benge v. State Farm Mutual Automobile Insurance Co.
, 297 Ill. App. 3d 1062 (1998), this court held that an insurer may maintain a subrogation action against a party which is its insured under another policy.  We believe that application of this principle clearly allows Universal, who may have had to defend Pierson under a liability policy, to pursue a subrogation claim against her for reimbursement of sums it paid under the collision policy, since she is not an insured under that policy.  The distinction between liability and collision policies for purposes of determining the allowance or prohibition of subrogation actions, while apparently not explicitly decided by Illinois reviewing courts, has been repeatedly acknowledged in other jurisdictions.  See 
Auto Driveaway Co. v. Aetna Casualty & Surety Co.
, 19 Ariz. App. 224, 506 P.2d 264 (1973); 
Dairyland Insurance Co. v. Munson
, 292 Minn. 141, 193 N.W.2d 476 (1972); 
Aetna Casualty & Surety Co. v. Pennsylvania National Mutual Casualty Insurance Co.
, 316 N.C. 368, 341 S.E.2d 548 (1986).  We find no basis for departure from these principles in the instant case.

Finally, Pierson argues that the trial court committed reversible error in granting Universal's motion to dismiss because, though seeking relief under section 2-619 of our code of Civil Procedure (735 ILCS 5/2-619 (West 1998)), the motion's introduction included the words "for failure to plead a cause of action," a defect properly raised under a different code section, section 2-615 (735 ILCS 5/2-615 (West 1998)).  We are unpersuaded by this argument.  Improper labeling of a motion to dismiss warrants reversal only if the nonmoving party has been prejudiced by the error.  
Storm & Associates, Ltd. v. Cuculich
, 298 Ill. App. 3d 1040, 1046 (1998).  Here, though the introductory paragraph of Universal's motion suggested that it questioned the legal sufficiency of Pierson's counterclaim, the motion's caption properly identified the statutory section governing the motion and correctly relied upon the grounds identified by that section as the basis for dismissal of the counterclaim: that easily proved affirmative matter -- the terms and legal interpretation of the attached insurance policy document -- defeated Pierson's claim.  Briefing and argument on the motion, as well as the trial court's order granting it, all reflect that the parties were in full agreement on the terms of the legal debate.  Consequently, Pierson has demonstrated no prejudice from the minimal misstatement in Universal's motion, we can conceive none, and we find no reversible error in the trial court's ruling on the motion.

Accordingly, the judgment of the circuit court of Cook County is affirmed. 

Affirmed.

GORDON, P.J., and O'MALLEY, J., concur.