901 A.2d 398 (2006)
386 N.J. Super. 307
UNIVERSAL UNDERWRITERS-GROUP a/s/o Harley Davidson of Edison, Plaintiff-Respondent,
v.
George E. HEIBEL, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued March 6, 2006.
Decided June 20, 2006.
*400 Anthony R. Higgins, argued the cause for appellant (Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski, attorneys; Mr. Higgins, of counsel and on the brief).
AnnMarie Flores, Trenton, argued the cause for respondent (Stephen E. Gertler, attorneys; Ms. Flores, Wall Tp., on the brief).
Before Judges CUFF[1], HOLSTON, JR. and GILROY.
The opinion of the court was delivered by
HOLSTON, JR., J.A.D.
This case presents an issue of first impression. We decide that New Jersey's compulsory motor vehicle liability insurance statute, N.J.S.A. 39:6B-1, imposes no requirement on an automobile dealer to provide collision insurance to a permissive user of the insured dealer's motor vehicle.[2] A permissive user of a motor vehicle is covered by the motor vehicle owner's liability policy, as directed by the compulsory motor vehicle liability insurance statute, only where an accident results in injury to the person or property of an innocent third party.
Defendant, George E. Heibel, appeals the Law Division's June 20, 2005 order for final judgment granting summary judgment in favor of plaintiff, Universal Underwriters Group (Universal) as subrogee of Harley Davidson of Edison (Harley) and against Heibel in the amount of $3,815.25. The June 20, 2005 order for final judgment amended the Law Division's order of April 4, 2005 granting summary judgment in favor of Universal and against Heibel. We affirm in part and reverse and remand in part.
On July 5, 2001, Heibel was test-driving, for possible purchase, a 2001 Buell Blast motorcycle owned by Harley. Heibel was operating the motorcycle at approximately 3:00 p.m. in an easterly direction on Wertsville Road in Ringoes at a curve in that road approximately 100 yards from Rocktown Road. Heibel was negotiating the curve at approximately forty miles per hour when the motorcycle lost traction with the road. Heibel stated to the State Trooper who investigated the accident that the tire of the motorcycle came out from under him because of loose gravel on the highway, which caused the motorcycle to fall to the ground and slide to a stop. The State Police report indicated that at the location of the accident there was "loose gravel in the area."
As a result of the accident, the motorcycle sustained property damage. The cost of parts and labor to repair the vehicle, according to a May 25, 2002 appraisal report from J's Appraisal Service, was in the amount of $3,815.25. Universal, Harley's insurance carrier, paid Harley *401 $2,567.61 in settlement of Harley's property damage claim, and then as subrogee of Harley, sued Heibel for the $2,567.61 that it paid to Harley plus $1,247.64, for which Harley "is out of pocket."[3] Heibel counterclaimed for a declaratory judgment that as a permissive user of the motorcycle owned by Harley that he was entitled to coverage under the policy of insurance that Universal provided Harley and that Universal could not bring a subrogation action against him.
On February 9, 2005, Universal moved for summary judgment,[4] arguing that Heibel was not an insured under its policy with Harley and that Heibel's negligence proximately caused the accident. Heibel cross-moved for summary judgment contending that, as a permissive driver, he was an insured under Universal's insurance policy, in accordance with the policy's express definition of an "insured" and that N.J.S.A. 39:6B-1, New Jersey's compulsory motor vehicle liability insurance statute, mandates, as a matter of public policy, that collision coverage be provided to a permissive driver of a motor vehicle dealership's motorcycle.
The motion judge found (1) that Universal's insurance policy with Harley did not provide coverage to Heibel as a permissive driver; (2) that the owner of the motorcycle was not required pursuant to N.J.S.A. 39:6B-1 to obtain insurance covering Heibel as a permissive user; (3) that Universal as the insurer of Harley could subrogate against Heibel; and (4) that Heibel was liable for the negligent driving of the motorcycle, which proximately caused the accident and damage to the vehicle.
Heibel argues that because he did not violate the permitted use granted him by Harley to test-drive the motorcycle, he was an "insured" under the automobile dealer's insurance policy. Heibel additionally advocates an interpretation of N.J.S.A. 39:6B-1 that would require coverage, by an automobile dealer's insurance policy, of an accident involving a permissive user, where there is damage only to the insured vehicle and no injury to a third party or damage to a third party's property. Heibel further asserts that as an insured under Harley's policy, Universal cannot subrogate against him. Lastly, Heibel argues that issues of material fact, as to whether the accident occurred because of his negligence or because of the loose gravel condition on the highway, precluded the court from granting Universal's motion for summary judgment on the issue of liability.

I

A. EXPRESS TERMS OF THE POLICY.
Heibel argues that he meets the definition of "WHO IS AN INSURED" in Section 500, which covers "OCCURRENCE[S] arising out of GARAGE OPERATIONS or AUTO HAZARD." Under "AUTO HAZARD," Subsections (2) and (4) define an insured as:
(2) Any of YOUR partners, paid employees, directors, stockholders, executive officers, a member of their household or a member of YOUR household, while using an AUTO covered by the Coverage Part, or when legally responsible for its use. The actual use of the AUTO must be *402 by YOU or within the scope of YOUR permission;
(4) Any other person or organization required by law to be an INSURED while using an AUTO covered by this Coverage Part within the scope of your permission.
Heibel contends that under Subsection (2), as a prospective purchaser of the motorcycle, that he was an insured under the policy because he was given permission to operate the motorcycle by an employee of Harley. He also claims that under Subsection (4), pursuant to N.J.S.A. 39:6B-1, that Harley was required to have the vehicle insured for his benefit while he was test driving it upon the roadways.
Disputes involving insurance contracts are resolved by looking to the language of the policy. Riccio v. Prudential Prop. & Cas. Ins. Co., 108 N.J. 493, 499, 531 A.2d 717 (1987). As contracts of adhesion, insurance policies are subject to special rules of interpretation. Araya v. Farm Family Cas. Ins. Co., 353 N.J.Super. 203, 206, 801 A.2d 1194 (App.Div.), certif. denied, 175 N.J. 77, 812 A.2d 1109 (2002). Nevertheless, words of an insurance policy should be given their ordinary meaning. Zacarias v. Allstate Ins. Co., 168 N.J. 590, 595, 775 A.2d 1262 (2001). "In the absence of any ambiguity, courts `should not write for the insured a better policy of insurance than the one purchased.'" Gibson v. Callaghan, 158 N.J. 662, 670, 730 A.2d 1278 (1999) (quoting Longobardi v. Chubb Ins. Co., 121 N.J. 530, 537, 582 A.2d 1257 (1990)). If the express language of the policy is clear and unambiguous, the "`court is bound to enforce the policy as it is written.'" Royal Ins. Co. v. Rutgers Cas. Ins. Co., 271 N.J.Super. 409, 416, 638 A.2d 924 (App. Div.1994) (quoting Flynn v. Hartford Fire Ins. Co., 146 N.J.Super. 484, 488, 370 A.2d 61 (App.Div.), certif. denied, 75 N.J. 5, 379 A.2d 236 (1977)).
In Section 500, the "INSURING AGREEMENT" obligates Universal to pay "all sums [that Harley] must pay as DAMAGES ... because of INJURY to which this insurance applies." Thus, Section 500 pertains to claims made by third parties injured by "ownership, maintenance, or use" of a Harley motor vehicle whether such injuries are sustained by way of "GARAGE OPERATIONS or AUTO HAZARD."
We are satisfied that based on the express language of the insuring agreement, any claim by Heibel against Universal would not implicate Universal's obligation to pay damages to a third party. Therefore, Section 500 does not apply to Heibel's claim.
In Section 300, under "INSURING AGREEMENT," coverage is not limited to third-party claims but includes loss of or to an insured vehicle. The policy states:
Insuring Agreement  WE will pay for loss of or to a COVERED AUTO from any cause, including sums an INSURED legally must pay as damages as a result of LOSS to a CUSTOMER'S AUTO, except as stated otherwise in the declarations or excluded. (emphasis supplied).
Under the definition provided in Section 300, a "COVERED AUTO" means: "an AUTO (1) owned by or acquired by YOU or (2) not owned by YOU but in YOUR care, custody or control."
However, an "insured," in Section 300, is defined as follows. "WHO IS AN INSURED  With respect to LOSS under this Coverage Part: (1) YOU; (2) YOUR partners, paid employees, directors, executive officers, and stockholders while acting within the scope of their duties as such with respect to a CUSTOMER'S AUTO."
*403 Heibel, as a test-driver of a vehicle for purchase, clearly does not fall within the unambiguous Section 300 definition of "who is an insured." Because defendant is not an insured under the Section 300 definition, Universal is not obligated to extend coverage to Heibel, notwithstanding that this type of accident would fall within the Section 300 "any cause" provision of the "insuring agreement."
Our construction is also in accord with out-of-state cases interpreting nearly identical policies written by Universal. See Farmers Auto. Ins. Assoc. v. Universal Underwriters Ins. Co., 348 Ill.App.3d 418, 284 Ill.Dec. 772, 810 N.E.2d 562 (2004); Universal Underwriters Group v. Pierson, 337 Ill.App.3d 893, 272 Ill.Dec. 481, 787 N.E.2d 296, appeal denied, 205 Ill.2d 650, 281 Ill.Dec. 98, 803 N.E.2d 502 (2003); W. Motor Co. v. Koehn, 242 Kan. 402, 748 P.2d 851 (1988); Behlmann Pontiac GMC Truck, Inc., v. Harbin, 6 S.W.3d 891 (Mo. 1999).

B. PUBLIC POLICY IMPLICATIONS OF THE COMPULSORY MOTOR VEHICLE INSURANCE STATUTE.
Having decided that the express terms of the insurance policy preclude the extension of coverage to Heibel, we now consider whether public policy requires such coverage. We are convinced that N.J.S.A. 39:6B-1 does not impose a legal obligation on Universal to indemnify a person test-driving a dealer vehicle where the test-driver only damages that vehicle.
N.J.S.A. 39:6B-1, in applicable part, requires this State's motor vehicle[5] owners to carry liability insurance coverage as follows: Liability insurance; amount of coverage.
a. Every owner or registered owner of a motor vehicle registered or principally garaged in this State shall maintain motor vehicle liability insurance coverage, under provisions approved by the Commissioner of Banking and Insurance, insuring against loss resulting from liability imposed by law for bodily injury, death and property damage sustained by any person arising out of the ownership, maintenance, operation or use of a motor vehicle wherein such coverage shall be at least in: (1) an amount or limit of $15,000.00, exclusive of interest and costs, on account of injury to, or death of, one person, in any one accident; and (2) an amount or limit, subject to such limit for any one person so injured or killed, of $30,000.00, exclusive of interest and costs, on account of injury to or death of, more than one person, in any one accident; and (3) an amount or limit of $5,000.00, exclusive of interest and costs, for damage to property in any one accident.
b. Notwithstanding the provisions of subsection a. of this section, an owner or registered owner of an automobile, as defined in section 2 of P.L. 1972, c. 70 (C.39:6A-2), registered or primarily garaged in the State may satisfy the requirements of subsection a. of this section by maintaining a basic automobile insurance policy containing coverages provided pursuant to subsections a. and b. of section 4 of P.L. 1998, c. 21 (C.39:6A-3.1).
When interpreting a statute, "words and phrases shall be read and construed with their context, and shall, unless inconsistent with the manifest intent of the legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language." N.J.S.A. 1:1-1. Furthermore, "[t]echnical words and phrases, and words and phrases having *404 a special or accepted meaning in the law, shall be construed in accordance with such technical or special and accepted meaning." Ibid.
"[O]ur goal of implementing the Legislature's intent begins with the text of the statute. If the meaning of the text is clear and unambiguous on its face, we enforce that meaning." State v. Reiner, 180 N.J. 307, 311, 850 A.2d 1252 (2004) (citing State v. Brannon, 178 N.J. 500, 505-06, 842 A.2d 148 (2004); State v. Thomas, 166 N.J. 560, 567, 767 A.2d 459 (2001)). Only "[i]f the language admits to more than one reasonable interpretation[] [do we] look to sources outside the language to ascertain the Legislature's intent." Reiner, supra, 180 N.J. at 311, 850 A.2d 1252; Brannon, supra, 178 N.J. at 507, 842 A.2d 148; State v. Pena, 178 N.J. 297, 307, 839 A.2d 870 (2004) (quoting Thomas, supra, 166 N.J. at 567, 767 A.2d 459).
An analysis of the wording of N.J.S.A. 39:6B-1 begins with its title: Liability insurance; amount of coverage. (emphasis supplied). Because "liability insurance" is not itself defined anywhere in the statute, it is necessary to determine its ordinary meaning. Liability insurance generally insures against direct or contingent liability of the insured. 15 Holmes' Appleman on Insurance § 111.1 (2nd ed. 1996). It is often described or alternatively known as third-party insurance since liability insurance "does not directly recompense the insured for the insured's own loss." Ibid. Instead, a liability insurance policy "protects the insured against damages which he may be liable to pay to third parties" as a result of the insured's conduct. Ibid.
Effectively, liability insurance protects the insured from having to pay monetary damages that result from the insured's own tortious conduct. Such liability arises where the insured causes: "1) damages on account of bodily injury to a person, other than the insured ...; or 2) damage to or destruction of property owned by parties (other than the insured's property) arising out of accidents or occurrences in business, professional, or personal life." Id. at 11.
Collision insurance, however, is referred to as first-party insurance. Id. at 74. First-party insurance is defined as "[a] policy that applies to an insured or the insured's own property." Black's Law Dictionary 817 (8th ed. 2004). In sorting out whether a policy is first-party insurance or third-party insurance it is necessary to look to whom the insurer owes the duty to pay, i.e., whether the insurer must pay "1) directly to the insured or 2) directly to a third-party claimant." Appleman, supra, § 111.1 at 25. Heibel's accident did not involve a third party who requires payment from an insurer. Thus, no third-party liability insurance policy is implicated.
Consistent with the above classification of liability insurance and "[p]ursuant to the omnibus liability coverage statute, every owner of a motor vehicle registered in New Jersey must have liability insurance coverage. N.J.S.A. 39:6B-1(a). Our comprehensive insurance scheme of mandating automobile insurance evinces a strong legislative policy of assuring at least some financial protection for innocent accident victims." Proformance Ins. Co. v. Jones, 185 N.J. 406, 414-15, 887 A.2d 146 (2005) (citing Home State Ins. Co. v. Cont'l Ins. Co., 313 N.J.Super. 584, 589, 713 A.2d 557, (App.Div.1998), aff'd, 158 N.J. 104, 726 A.2d 1289 (1999)). In State v. McCourt, 131 N.J.Super. 283, 329 A.2d 577 (App.Div. 1974), we determined that the legislative purpose of the compulsory automobile liability provision of N.J.S.A. 39:6B-1 was to ensure compensation for damages to drivers of other vehicles who may be injured by the negligence of the driver of another *405 vehicle. Id. at 286, 329 A.2d 577. We stated, "[t]his requirement is a salutary regulation by the State of its highways to ensure that they are used safely and that others who may be damaged by such use are protected, by spreading the risk of the damage by liability insurance." Ibid.
Although N.J.S.A. 39:6B-1 mandates that every owner possess liability insurance in at least the amounts required by the statute, it does not create, through its express language or ancillary authority, an obligation for an automobile owner to provide indemnity to a permissive user, such as Heibel, who is in an accident while test-driving a dealer-owned vehicle and where no third-party is injured or sustains property damage. See Matits v. Nationwide Mut. Ins. Co., 33 N.J. 488, 496-97, 166 A.2d 345 (1960). This determination recognizes the public policy underpinning of N.J.S.A. 39:6B-1, "that persons who cause automobile accidents are able to answer financially to their innocent victims." Id. at 496, 166 A.2d 345. In this case, there simply is no public benefit implicated because no innocent third party was injured in the accident. Accordingly, we are convinced that there is no statutory requirement compelling a dealer's insurer to indemnify a permissive user for damages to the dealer's own motor vehicle. Other jurisdictions have addressed the issue and have also found no duty under similar compulsory insurance statutes for a dealership's insurer to provide collision coverage in factual situations similar to those in the present case. See Farmers, supra, 284 Ill.Dec. 772, 810 N.E.2d at 562; Pierson, supra, 272 Ill.Dec. 481, 787 N.E.2d at 296; Harbin, supra, 6 S.W.3d at 891.
Additionally, in N.J. Coalition of Health Care Professionals v. N.J. Department of Banking & Insurance, 323 N.J.Super. 207, 254, 732 A.2d 1063 (App. Div.), certif. denied, 162 N.J. 485, 744 A.2d 1208 (1999), we noted that "[t]he mandatory coverages enumerated in ... N.J.S.A. 39:6A-3.1, and describing the `basic' policy, do not include comprehensive and collision coverage[,]" and that "[t]he statute is silent on the traditional physical damage coverages  comprehensive and collision." Ultimately, liability insurance is compulsory while collision insurance is optional. Thus, while the law imposes an obligation on the owner of a registered vehicle to maintain liability insurance that covers a permissive user's damages to a third party, no such requirement exists with respect to collision insurance. Such coverage is the responsibility of the user's insurance carrier. Farmers, supra, 284 Ill.Dec. 772, 810 N.E.2d at 565-66.

C. UNIVERSAL AS SUBROGEE OF HARLEY'S CLAIM.
In the context of an insurance carrier, insurers typically bind themselves to pay benefits to the insured and provide for subrogation rights to recover costs from tortfeasors who are liable for conduct which generated the covered loss in the first place. Craig & Pomeroy, New Jersey Auto Insurance Law, § 25:3-1 (2005). The rights attained by the insurer by way of subrogation are identical to the rights the insured would have had absent the insurance policy against the tortfeasor. Aetna Ins. Co. v. Gilchrist Bros., Inc., 85 N.J. 550, 560-61, 428 A.2d 1254 (1981).
In this controversy, Universal's policy expressly sets out the parameters for subrogation in the "General Conditions" section of the policy. Specifically, the Universal policy indicates that once it "[has] made a payment under this policy ... [Harley's] or an INSURED'S rights to recover from others become [Universal's] rights." Accordingly, once a payment was made by Universal to Harley for damage to the motorcycle in accordance with the *406 collision coverage provision of Harley's insurance policy, [Harley's] right to recover from Heibel became Universal's right.
In summary, we are convinced that Heibel was not a named insured under subsections (2) and (4) of Section 500 or under the "Auto Inventory Coverage Part 300" section of Universal's insurance policy. We are equally convinced that New Jersey's compulsory motor vehicle insurance statute, N.J.S.A. 39:6B-1, requires only that a dealer-owner of a motor vehicle provide liability coverage for the protection of the persons and property of third-parties but does not mandate that a dealer-owner provide collision coverage for permitted-users who are test-drivers of its vehicles. Because Heibel is not covered under the Universal policy, Universal has a right of subrogation to bring an action to recover the full amount of damages caused to the motor vehicle by Heibel.

II
Heibel contends that the motion judge erred when he granted summary judgment on the issue of liability against him. We agree.
The interrogatory answers of Heibel and the information contained in the State Police investigative report, which were the only versions of the incident before the motion judge, when viewed in the light most favorable to Heibel, create a genuine issue of material fact as to whether the proximate cause of the accident was because the tires of the motorcycle slid out from under Heibel on unnoticed loose gravel upon the surface of the roadway or because of negligent driving on his part.
A moving party is entitled to summary judgment if there is no genuine issue as to any material fact in the record. R. 4:46-2. In deciding a summary judgment motion, we apply the standard articulated by the Supreme Court in Brill v. Guardian Life Insurance Co. of America, 142 N.J. 520, 540, 666 A.2d 146 (1995):
[A] determination whether there exists a "genuine issue" of material fact that precludes summary judgment requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.
Therefore, we must assume Heibel's version of the facts is true and give Heibel the benefit of all favorable inferences. Id. at 535-36, 666 A.2d 146.
It is well-settled law that a recovery for damages cannot be had merely upon proof of the happening of an accident. Negligence is never presumed; it, or the circumstantial basis for the inference of it, must be established by competent proof presented by plaintiff. Whether such proof exists is preeminently a question of fact for the jury. Murphy v. Terzako, 14 N.J.Super. 254, 259, 82 A.2d 1 (App.Div.1951).
Our Supreme Court in Stackenwalt v. Washburn, 42 N.J. 15, 198 A.2d 454 (1964), stated, "`There can be no doubt that the question of negligence in each case may properly be left to the jury with the general instruction ... of reasonable care under existing circumstances. Questions of proper speed and control of a vehicle are pre-eminently questions of fact for the jury to determine.'" Id. at 24, 198 A.2d 454 (citations omitted).
In Mockler v. Russman, 102 N.J.Super. 582, 246 A.2d 478 (App.Div.1968), certif. denied, 53 N.J. 270, 250 A.2d 135 (1969), defendant, a school bus driver, slid and struck the rear of plaintiff's stopped vehicle at an intersection as a result of icy conditions upon the highway. Id. at 585, *407 246 A.2d 478. This court affirmed the trial court's denial of a new trial, as a result of a jury verdict of no cause of action. Id. at 591, 246 A.2d 478. The plaintiff argued that the bus driver knew of the hazardous condition because he had been driving the school bus for some time before the accident and had observed plaintiff's vehicle stopped at the intersection when he was one and a half blocks to the rear. Id. at 586-87, 246 A.2d 478. Plaintiff contended, therefore, that as a matter of law the bus driver was negligent when, after failing to apply his brakes until he was fifty feet behind plaintiff's vehicle, he turned his wheel to the right in an attempt to pass plaintiff's car and struck plaintiff. Plaintiff claimed that otherwise the accident would not have happened. Id. at 587, 246 A.2d 478. The plaintiff asserted that because the driver had knowledge of the slippery condition of the road, the skidding of the bus was conclusive evidence of negligence. Ibid.
We held that skidding of an automobile is not in itself sufficient to justify an inference of negligence on the part of the operator of a motor vehicle. Ibid. We stated:
Should the rule be otherwise every automobile driver would be compelled to stay off the public roads when such roads happened to be slippery. It is common knowledge that the sudden and unexpected skidding of an automobile is one of the natural hazards of driving on icy roads and that it may befall even the most cautious of drivers. If such a driver is operating his car as would a reasonably prudent person under the circumstances, he is not to be held negligent merely because his car skidded, resulting in damage or injury to another. However, skidding may be evidence of negligence if it appears that it was caused by the failure of the driver to take reasonable precautions to avoid it, when conditions of which he knew or should have known made such a result probable in the absence of such precautions.
[Id. at 587-88, 246 A.2d 478.]
The rationale we expressed in Mockler applies here. Heibel denies any negligence. As in Mockler, the motorcycle Heibel was driving was a vehicle that slid on a substance on the roadway which, if not noticed because the color of the gravel matched the roadway surface, may excuse him from liability if he was otherwise driving the motorcycle carefully.
Heibel's sliding on loose gravel, similar to a vehicle sliding on black ice or on oil on a highway after a recent rainfall, may not be due to driver error but rather an unavoidable occurrence resulting from the condition of the highway. We are convinced, therefore, that a genuine issue of material fact exists precluding summary judgment. Accordingly, we reverse the court's granting of summary judgment on the issue of liability and damages and remand the matter to the trial court for trial.
Affirmed in part and reversed and remanded in part.
NOTES
[1] Judge Cuff did not participate in oral argument. However, with the consent of counsel, she has joined in this opinion. R. 2:13-2(b).
[2] The policy at issue is a "garageman's" policy. We do not address the applicability of this holding to a personal policy, but we note that collision coverage is not mandatory in this state.
[3] At oral argument, counsel confirmed that the $1,247.64 represented Harley's deductible under the insurance policy.
[4] Summary judgment on the issue of liability was granted in favor of plaintiff on April 4, 2005. The June 20, 2005 order of final judgment amends the April 4, 2005 order to reflect damages in the amount of $3,815.25 in favor of plaintiff.
[5] Motorcycles are included in the definition of Motor Vehicle. N.J.S.A. 39:1-1.