**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1360-23

MELISSA PRESBERY,

    Plaintiff-Respondent,

v.

JASON WILLITTS,

    Defendant-Appellant.

_____

Argued January 15, 2025 – Decided March 17, 2025

Before Judges Currier, Marczyk, and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Docket No. L-2295-21.

Robert M. Kaplan argued the cause for appellant (Margolis Edelstein, attorneys; Robert M. Kaplan and Jeanine D. Clark, on the briefs).

Jeremy M. Weitz argued the cause for respondent (Spear, Greenfield, Richman, Weitz & Taggart, PC, attorneys; Jeremy M. Weitz, on the brief).

PER CURIAM

Defendant Jason Willitts appeals from the trial court's December 8, 2023 order denying his motion for a new trial. Following our review of the record and the applicable legal principles, we affirm.

I.

Plaintiff Melissa Presbery filed a complaint alleging she sustained permanent injuries as a result of an automobile accident. Defendant answered, denying he was negligent and asserting plaintiff failed to demonstrate she sustained a permanent injury proximately caused by the accident.

In March 2020, plaintiff was stopped at a red light on Route 73 in Maple Shade when she was rear-ended by defendant. Plaintiff testified she had no warning of the accident. Defendant testified that on the morning of the accident he could not recall if it was raining, but the road was wet because it had rained. He recounted he was in the right lane and observed there was a red light as he approached the intersection where plaintiff was stopped. Defendant noticed fewer vehicles in the left lane, so he moved into that lane. As he was slowing down for the red light, he stated he "just couldn't control" his car, his "foot was on the floor," his car "was hydroplaning and [he] just could not stop, [he] lost control." Defendant's car subsequently collided into the rear of plaintiff's

A-1360-23

vehicle. Defendant was unable to identify any road conditions other than the wet road that caused his vehicle to hydroplane.

At trial, plaintiff relied on the testimony of Dr. Gerald Dworkin, Dr. Scott Pello, and Dr. Nirav Shah. Plaintiff's experts opined plaintiff sustained an acute and permanent disc herniation in the cervical spine at C6-7 and an acute and permanent radiculopathy found by electromyography (EMG) at C5-6. Dr. Shah testified plaintiff sustained an aggravation of pre-existing but asymptomatic degenerative findings in the cervical spine, most notably C4-5 and C5-6. Dr. Shah also noted plaintiff's "symptoms began after the accident. Prior to this accident, [plaintiff] ha[d] not had prior medical care or imaging related to these complaints." Plaintiff also testified she never had pain or problems with her neck or lower back prior to the accident.

Defendant's pre-trial memorandum requested a jury charge pursuant to Mockler v. Russman, 102 N.J. Super. 582 (App. Div. 1968). The proposed charge read as follows: "[i]f a driver is operating [their] car as would a reasonably prudent person under the circumstances, [they are] not to be held negligent merely because [their] car skidded or slid, resulting in damage or injury to another." (Mockler charge).

Plaintiff also requested Model Civil Jury Charge 8.11F, "Aggravation of Pre-Existing Disability." She noted in the pre-trial memorandum that Dr. Shah diagnosed her with "[a]ggravation of age-appropriate changes in the cervical spine."

Following the trial testimony, the court conducted a charge conference where defendant again requested the Mockler charge. The trial court denied defendant's request. The court stated the jury "get[s] to decide whether [defendant] was acting as a reasonabl[e] and prudent person whether the [Mockler] charge is there or not." The court distinguished Mockler, finding defendant was aware of the wet road, and he did not "suddenly" come upon the condition. The court concluded defense counsel was permitted to argue defendant "wasn't doing anything wrong, he was acting as a reasonably prudent person," but defendant was "not entitled to [the trial court] telling [the jury] that."

Despite the testimony at trial regarding the aggravation issue and plaintiff requesting an aggravation charge in her pre-trial submissions, she did not specifically request the instruction during the charge conference. The court also overlooked the previously requested aggravation charge.

A-1360-23

The parties proceeded to give closing arguments. At the conclusion of summations, plaintiff's counsel recognized the aggravation charge was not included in the court's proposed jury instructions and requested the court to add it to the charges. Over the objection of defendant, the court granted plaintiff's request for the aggravation charge and provided both counsel an opportunity to make brief supplemental closings confined to the aggravation issue. Defendant objected, stating the parties had already given closing arguments. Defendant did not argue the aggravation charge was inappropriate because plaintiff had not provided the jury with the required comparative analysis—the issue he now raises on appeal. Counsel for both parties gave supplemental closings limited to the aggravation issue.

Thereafter, the court provided its jury instructions. In instructing the jury on negligence, with respect to the operation of an automobile, the court explained in part:

> This simply means that the driver of an automobile . . . is under the duty of exercising . . . that degree of care, precaution, and vigilance in the operation of their car which a reasonably prudent person would exercise under similar circumstances. It has sometimes been defined as care commensurate with the risk of danger.
>
> Thus, the driver of an automobile is required to use reasonable care in the control and management and

5

operation of their machine. A driver is required to make such observations for traffic and <u>road conditions</u>, and to exercise such judgment to avoid collision or injury to others on the highway as a reasonably prudent person would have done in the circumstances.

> . . . .

> Negligence is then the failure to adhere to this standard of conduct.

[(Emphasis added).]

The court further provided an intervening cause charge, at defendant's request:

> In this case [defendant] . . . claims that the accident or [p]laintiff's injury was caused by an independent intervening cause, and therefore that he was not a contributing factor of the accident or injury.

> An intervening cause is the act of an independent agency that destroys the causal connection between . . . [d]efendant's negligence and the accident or injury.

> . . . .

> However, [defendant] will not be relieved from liability for negligence by the intervention of acts of third persons if those acts were reasonably foreseeable.

> . . . .

> The fact that there were intervening causes that were foreseeable, or that were normal incidents of the risk created does not relieve . . . [d]efendant from liability.

You must determine whether the alleged intervening cause was an intervening cause that destroyed the substantial causal connection between . . . [d]efendant's negligent actions and the accident or injury. If it did, then . . . [d]efendant's negligence was not a proximate cause of the accident or injury.

As to the 8.11F aggravation charge, the court instructed the jury as follows:

In this case evidence has been presented that . . . [p]laintiff had a condition before the accident; that is, age-appropriate degenerative disc disease. I will refer to this condition as the preexisting condition.

There are different rules for awarding damages depending upon whether the preexisting condition was or was not causing [p]laintiff any harm or symptoms at the time of this accident.

Obviously . . . [d]efendant . . . was not responsible for any preexisting condition of . . . [p]laintiff. As a result you may not award any money in this case for damages attributable solely to any preexisting condition.

If you find that [p]laintiff's preexisting condition was not causing her any harm or symptoms at the time of the accident, but that the preexisting condition combined with injuries occurred in the accident to cause her damage, then . . . [p]laintiff is entitled to recover . . . the full extent of the damages she sustained.

The jury returned a verdict in favor of plaintiff, finding defendant was negligent, the negligence was a proximate cause of the accident, and that

A-1360-23

plaintiff sustained a permanent injury caused by the accident. The jury awarded plaintiff non-economic damages in the amount of $240,000. The court subsequently entered an order of judgment in the amount of $250,885.48 to include pre-judgment interest.

Thereafter, plaintiff filed a motion for counsel fees, enhanced interest, and legal expenses based upon the non-acceptance of the previously filed offer of judgment.[1] Meanwhile, defendant moved for a new trial, arguing the court erred in not giving a <u>Mockler</u> charge and improperly utilizing the aggravation charge. Defendant also opposed plaintiff's motion for attorney's fees and costs, but raised "no objection to [p]laintiff's counsel's calculation of the interest and the litigation expenses." Rather, defendant only objected to the hourly rate requested by plaintiff.

On January 19, 2024, the trial court denied defendant's motion for a new trial. The trial court also entered an order granting, in part, plaintiff's offer of judgment motion. The court reduced the award of attorney's fees from $39,065 to $31,800. The court also awarded costs in the amount of $13,937.54, and an additional $7,675.07 in pre-judgment interest.

---

[1] Plaintiff filed an offer of judgment in November 2022 for defendant's policy limit of $100,000.

This appeal ensued.

## II.

Defendant asserts the trial court erred in denying his request for a Mockler charge; charging the jury with Model Civil Jury Charge 8.11F, "Aggravation of Preexisting Injury," and allowing plaintiff's counsel to re-open his summation to address the aggravation issue; and by failing to vacate the offer of judgment assessments under Rule 4:58-2(c) because of the undue hardship imposed on defendant.

Review of jury instructions in a civil case involves a two-step process. First, we must determine whether an error actually occurred. "In civil matters, the trial court should give an instruction that appropriately guides the jury on the legal basis of a plaintiff's claim or a defendant's affirmative defense, so long as there is a reasonable factual basis in the evidence to support that claim or defense." Walker v. Costco Wholesale Warehouse, 445 N.J. Super. 111, 120 (App. Div. 2016). "Jury charges 'must outline the function of the jury, set forth the issues, correctly state the applicable law in understandable language, and plainly spell out how the jury should apply the legal principles to the facts as it may find them . . . .'" Velazquez v. Portadin, 163 N.J. 677, 688 (2000) (quoting Jurman v. Samuel Braen, Inc., 47 N.J. 586, 591-92 (1966)).

Second, we must determine whether that error "may have affected the trial's result." Walker, 445 N.J. Super. at 120 (quoting Washington v. Perez, 219 N.J. 338, 351 (2014)). Importantly, we have noted that "an improper jury instruction is a poor candidate for application of the harmless error rule, [and] a charge which misleads a jury will require a reversal and a new trial." Vallejo by Morales v. Rahway Police Dep't, 292 N.J. Super. 333, 342 (App. Div. 1996) (internal citations omitted).

## A.

Defendant asserts this case is analogous to Mockler because he was aware of the wet road but had not previously experienced a loss of control of his vehicle prior to him skidding and causing the accident. He argues his testimony "established all the elements necessary for the Mockler defense" and that the court's failure to instruct the jury on this issue "improperly reduced . . . [plaintiff's] burden and eliminated . . . [defendant's] viable defense." Defendant contends the court's decision not to provide a Mockler charge "created some level of confusion with respect to which party bore the burden of proving . . . negligence" and that he "was saddled with the burden of proving an affirmative defense but . . . was not afforded the opportunity to have the jury instructed about that legal defense." Defendant further contends the failure to charge the

10

jury "is akin to allowing . . . [p]laintiff to proceed under a theory of res ipsa loquitur."

Mockler involved an "appeal from a judgment entered . . . following a jury verdict of no cause for action in favor of [the] defendants." 102 N.J. Super. at 585. A plaintiff was injured when a school bus operated by the defendant rear-ended her as she was stopped at a traffic light. Ibid. "[A] thin layer of snow covered the roads in the area causing them to be slippery." Id. at 586. A third party witnessed the accident and testified "the school bus was not going very fast." Ibid. The defendant testified he knew the roads were slippery, but he had not skidded prior to the accident. Ibid. The defendant recounted that as he was driving roughly ten "miles per hour and when he reached a point [fifty] feet to the rear of [the] plaintiffs' car he applied the brakes. He testified . . . the bus skidded and that although he turned his wheel to the right in an attempt to" avoid a collision, "the bus kept going straight and struck the rear of [the] plaintiffs' vehicle." Ibid.

On appeal, the plaintiffs contended the verdict was against the weight of the evidence as the defendant "knew of the hazardous road conditions" and was negligent in failing to apply his brakes and in striking the plaintiffs' car. Id. at 586-87. The plaintiffs argued that the "test for whether" the defendant "was

11

operating the bus in a reasonable and prudent manner under the circumstances . . . was whether he could stop the bus without striking [the] plaintiffs' stopped vehicle." Id. at 587. We rejected that argument noting:

> [i]t is common knowledge that the sudden and unexpected skidding of an automobile is one of the natural hazards of driving on icy roads and that it may befall even the most cautious of drivers. If such a driver is operating his car as would a reasonably prudent person under the circumstances, he is not to be held negligent merely because his car skidded, resulting in damage or injury to another. However, skidding may be evidence of negligence if it appears that it was caused by the failure of the driver to take reasonable precautions to avoid it, when conditions of which he knew or should have known made such a result probable in the absence of such precautions.
>
> [Id. at 587-88.]

This court reaffirmed in Mockler that "[i]t is well-settled law that . . . . [n]egligence is never presumed," but rather "is preeminently a question of fact for the jury." Id. at 588. We observed the defendant "knew the roads were slippery," but "there was no evidence that [the defendant] could, with the exercise of proper diligence, have foreseen that his bus would skid into the rear of [the] plaintiffs' car when he applied the brakes." Id. at 588. Importantly,

> [t]he question for determination by the jury was whether [the defendant] exercised the care that a reasonably prudent person would have exercised under the circumstances confronting him. The verdict . . .

> indicated that the jury found that he had exercised such care and that the accident was caused not by any negligence on the part of [the defendant] but solely by the slippery condition of the road.
>
> [Ibid.]

We determined the jury could have reasonably concluded from the legitimate inferences in the record that the defendant "could not have foreseen that the icy condition of the road would cause the bus to skid and hence was not guilty of negligence." Id. at 589.

Although the facts here are similar to Mockler, since we issued that decision over fifty years ago, we have never required that a trial court provide a so-called Mockler charge. In fact, there was no Mockler-type charge given in the Mockler case itself. Rather, we rejected the plaintiff's "implicit" argument that "the skidding of the bus, where the driver had knowledge of the slippery condition of the road, of and by itself was conclusive evidence of negligence." Id. at 587. We emphasized the "issue of liability was . . . solely for determination by the jury." Id. at 589.

Here, contrary to defendant's arguments, the jury did not lack a basis to find defendant's inability to stop was anything other than negligence. The jury was appropriately given the negligence charge regarding the operation of a motor vehicle. The jury was instructed that automobile drivers are "required to

use reasonable care in the control and management and operation of their [vehicles]."  Notably, regarding defendant negotiating the wet road on the day of the accident, the jury was instructed:  "A driver is required to make such observations for traffic and <u>road conditions</u>, and to exercise such judgment to avoid collision or injury to others on the highway as a reasonably prudent person would have done in the circumstances."  (Emphasis added).

Plaintiff was free to argue in her closing argument that defendant failed to exercise due care, just as defendant was permitted to argue that he exercised reasonable care under the circumstances, including navigating the wet road. Thus, the jury was able to consider both parties' arguments regarding the road conditions and determine whether defendant exercised due care under the circumstances.  There was no requirement that the court provide defendant's personally crafted proposed <u>Mockler</u> charge.[2]  The negligence jury instruction included the proper concepts for the jury's determination.

---

[2]  Likewise, the court was not required to advise the jury that "skidding may be evidence of negligence if it appears that it was caused by the failure of the driver to take reasonable precautions to avoid it, when conditions of which [the driver] knew or should have known made such a result probable in the absence of such precautions."  <u>Mockler</u>, 102 N.J. Super. at 588.

We are also unpersuaded by defendant's argument the jury was confused as to which party had the burden of proof. The court correctly, and unequivocally, instructed the jury "[t]he burden of proof is on . . . [p]laintiff to establish her claim by a preponderance of the evidence." Simply because the jury found defendant was negligent does not mean it did not consider defendant's asserted defenses.

Furthermore, defendant's assertion that "failure to provide [a] Mockler charge is akin to allowing . . . [p]laintiff to proceed under a theory of res ipsa loquitur" is unpersuasive. The jury heard testimony, reviewed evidence, and concluded defendant was negligent. The trial judge instructed the jury that defendant asserted an intervening cause—the wet road—caused the accident, and not defendant's negligence. The jury had to determine the negligence of each party, completely contrary to a case involving res ipsa loquitur.

Defendant's reliance on Universal Underwriters Group v. Heibel, 386 N.J. Super. 307 (App. Div. 2006), is also misplaced. In Heibel, we determined the trial court "erred when [it] granted summary judgment on the issue of liability against" the defendant. Id. at 320. We determined a genuine fact issue existed "as to whether the proximate cause of the accident was because the tires of the motorcycle slid out from under [the defendant] on unnoticed loose gravel . . . or

because of [the defendant's] negligent driving." Id. at 320-21. Relying on Mockler, we held the "motorcycle [the defendant] was driving . . . slid on a substance on the roadway which, if not noticed because the color of the gravel matched the roadway surface, may excuse [the defendant] from liability if [the defendant] was otherwise driving the motorcycle carefully." Id. at 322. Like Mockler, nothing in Heibel required a jury charge like the one proposed by defendant here. Rather, in Heibel, like Mockler, we found it inappropriate to infer negligence and to take the consideration of negligence away from the jury.

None of the cases defendant cites requires the court to provide a Mockler charge. Rather, these cases merely stand for the proposition that where a defendant asserts their car skidded, negligence cannot be inferred. Negligence was not inferred here, and the burden clearly remained on plaintiff to prove her allegations. The jury was appropriately instructed to assess whether defendant made appropriate observations of the road conditions so as to avoid a collision with plaintiff as a reasonably prudent person would have done under the circumstances. We therefore conclude the court did not err in declining to give a Mockler charge.

B.

Defendant next contends plaintiff's "experts did not establish the necessary prerequisites for an aggravation charge" under Model Civil Jury Charge 8.11F. He argues Dr. Shah's testimony did "not contain a comparative analysis sufficient to satisfy" Polk v. Daconceicao, 268 N.J. Super. 568 (App. Div. 1993), and Davidson v. Slater, 189 N.J. 166 (2007). He further asserts neither Dr. Pello nor Dr. Dworkin offered any opinion that plaintiff had a pre-existing condition or that she suffered an aggravation of any injury. Defendant asserts "Dr. Shah did not testify that he reviewed any prior medical records other than the records of Dr. Dworkin who had referred [plaintiff] to Dr. Shah. Thus, Dr. Shah did not even have the ability to perform a comparative analysis." Lastly, defendant maintains the court erred in allowing the aggravation charge after the parties had completed their closings, and the court did not mitigate the harm when it allowed both parties to provide supplemental closings.

Plaintiff counters that she "presented medical testimony through Dr. . . . Shah, a neurosurgeon, who . . . opined that [plaintiff] had aggravated previously asymptomatic and unknown degenerative conditions in her cervical spine in the subject incident, rendering said conditions asymptomatic; as well as new injuries." Plaintiff asserts Dr. Shah opined the accident "caused an acute disc

17

herniation at C6-7 and aggravations of previously asymptomatic areas of the cervical spine above the C6-7 level, now causing cervicalgia and cervical radiculopathy." Plaintiff also contends that Dr. Dworkin relied on the EMG to find "the radiculopathy finding was . . . acute."

Plaintiff asserts the cases relied upon by defendant—Reichert[3] and Sherry[4]—dealt with multiple accidents, sometimes involving the same body part, and sometimes with overlapping injuries. Plaintiff maintains that in this case there was nothing to apportion and/or compare. She argues the only records available for review were those of her primary care physician, which defendant's expert Dr. Larry Rosenberg acknowledged did not include any evidence of prior neck or back complaints.

Here, Dr. Shah testified plaintiff "denied any meaningful symptoms before the car accident" when he first examined her in January 2023. Dr. Shah testified he relied on pre-accident medical records, as well as an MRI conducted in May 2020, shortly after the March 2020 accident. Dr. Shah testified he

---

[3] Reichert v. Vegholm, 366 N.J. Super. 209 (App. Div. 2004).

[4] Sherry v. Buonansonti, 287 N.J. Super. 518 (App. Div. 1996).

observed "a slipped disc predominantly between the sixth and seventh vertebrae."

Dr. Shah then opined as to "some inappropriate changes that were causing some neural compression" to the C5-6 and C4-5 discs he believed were aggravated and made symptomatic by the accident. Referring to the MRI, Dr. Shah testified the C3-4, C4-5, C5-6, and C6-7 discs were all "out of line to some degree of neural involvement," but that the C6-7 disc was the "worst," and the others "were at least aggravated by the accident." The following colloquy with counsel ensued:

> [Plaintiff's counsel]: When you say at least aggravated would you agree that it's possible [plaintiff] had some findings from C3-4, from the C5-6 at least prior to the March 3, 2020 motor vehicle collision?
>
> [Dr. Shah]: Yes, I think when determining causality, you have to determine other factors. The age and preexisting anatomy is always a factor. And that includes within a probability and certainty those findings existed before the accident but were not symptomatic before the accident.
>
> [Plaintiff's counsel]: Also, how do you explain the fact that she had . . . these findings but did not experience any symptoms until March 3[], 2020?
>
> . . . .
>
> [Dr. Shah:] For patients who have age appropriate [degeneration] changes like [plaintiff],

19

they're not expected to have symptoms from . . . those findings unless something happened along the way that accelerated their degeneration or made them symptomatic.

[Plaintiff's counsel]: Does the fact that one has age appropriate degenerative findings make them more susceptible to traumatic injuries?

[Dr. Shah]: They do. . . .

. . . .

[Dr. Shah]: . . . [O]ftentimes there may be a disc herniation due to aging and there's some evidence of neuro involvement but it was not symptomatic. . . . [T]he function of that disc is altered, thus irritating the adjacent nerve and making it symptomatic.

The colloquy continued between plaintiff's counsel and Dr. Shah:

[Plaintiff's counsel]: So Doctor, based upon the evaluation you performed on [plaintiff], the history that you obtained, the records that you reviewed, testing that you've gone over, what opinion did you formulate with respect to a diagnosis of injury that you believe [plaintiff] sustained in the March 3[], 2020, motor vehicle collision?

[Dr. Shah]: [Plaintiff's] injures were to the spine. Specifically to her neck. She sustained a C6-C7 disc herniation and she also aggravated previously non-symptomatic areas of the spine above C6-C7. Those injuries disseminate additional diagnoses including cervicalgia, which is neck pain to the head and shoulders, as well as cervical radiculopathy, which is the injury, inflammation or irritation of a neck spinal

20

nerve. She also had her low back injury . . . what we call lumbar radiculopathy as well.

Importantly, during the course of Dr. Shah's de bene esse deposition, defendant never objected to the aggravation-related testimony. Defendant also never moved to strike any portions of Dr. Shah's testimony.

Dr. Dworkin and Dr. Pello both testified similarly to Dr. Shah regarding plaintiff's injuries, but they opined her injuries were all new, stemming solely from the accident. Notably, Dr. Dworkin testified that, as a result of the collision, plaintiff "suffered from a traumatic cervical pain syndrome with right arm radiation. Secondary, traumatic disc injuries and protrusions, herniations, bulges from C3-4, or C4-5, C5-6 and C6-7, four levels, as seen on MRI. And complicated by an acute right-sided C5-6 cervical radiculopathy that we saw on the EMG." Dr. Dworkin also testified, "we all go through the same type of congenital degenerative changes in our spine . . . . [b]ut after an injury like [this], that's going to greatly accelerate it."

Dr. Pello testified that he observed "disc protrusions" largely at the C5-6 and C6-7 levels. He testified there was radiculopathy at the C5-6 level, and "multi level cervical disc protrusions and the cervical strain and sprain injury." He believed these injuries were directly caused by the March 3, 2020 accident.

21 A-1360-23

Dr. Pello also opined "obviously there were degenerative changes already there," but ultimately tied the "disc protrusions to [the] accident."

In Polk, we determined that a physician must base their testimony as to a "diagnosis of aggravation of a pre-existing injury or condition . . . upon a comparative analysis of the plaintiff's residuals prior to the accident with the injuries suffered in the automobile accident at issue." 268 N.J. Super. at 575. We determined the foundation for such a diagnosis "must encompass an evaluation of the medical records of the patient prior to the trauma with the objective medical evidence existent post trauma." Ibid. In Davidson, the Court confirmed that a comparative analysis is required in cases where the plaintiff pleads aggravation and exacerbation of injuries due to multiple accidents. 189 N.J. at 185-86.

The cases relied upon by defendant are not germane to our analysis. Reichert primarily dealt with the issue of whether the plaintiff "bore the burden of apportioning damages" between "injuries [suffered] to the same [body] parts . . . from [a] fall and [a subsequent] automobile collision, less than one month later" in a suit against the automobile collision defendant. 366 N.J. Super. at 212.

Sherry involved the denial of a motion for summary judgment, and this court found the plaintiff did not provide a comparative analysis regarding the causation of her injuries. 287 N.J. Super at 520. The plaintiff was involved in multiple accidents including the subject accident and then another accident a few months later. Id. at 521.

Similarly, Bennett v. Lugo addressed the dismissal of the plaintiff's complaint on summary judgment. 368 N.J. Super. 466, 469 (App. Div. 2004). The plaintiff there "suffered several injuries to his low back prior to [the subject] accident." Ibid. This court reversed, finding the "plaintiff's medical proofs provided the required Polk analysis and created a jury issue that [the] plaintiff suffered a . . . permanent injury as a result of the . . . accident, which was sufficiently differentiated from any residuals resulting from his prior injuries to that same body part." Ibid.

Here, plaintiff did not have a history of prior accidents or injuries. Dr. Shah testified plaintiff was asymptomatic prior to the accident. Plaintiff similarly testified she had no prior complaints and received no treatment for her neck or back before this accident. The record is also devoid of any evidence that plaintiff had any prior radiographic studies of her back or neck. It is not

23

clear, therefore, what records her experts could have reviewed to provide the comparative analysis advocated by defendant.

Moreover, all the experts observed that plaintiff had pre-existing degenerative findings. The experts also identified their objective findings of plaintiff's injuries based on their review of her radiographic studies coupled with the positive EMG. The court, in turn, gave the jury an appropriate aggravation charge, advising the jury that "[i]f [it found] [p]laintiff's preexisting condition was not causing her any . . . symptoms [before the] accident, but that the preexisting condition combined with injuries [from] the accident to cause her damage, . . . [p]laintiff is entitled to recover . . . the full extent of the damages she sustained."

Under these circumstances, a traditional <u>Polk</u> analysis was not necessary given plaintiff's lack of prior complaints, injuries, accidents, and radiographic studies. All of plaintiff's experts, and defendant's expert, commented on plaintiff's degenerative changes. Plaintiff's experts opined on the injuries she sustained from the accident. They were not able to provide any further analysis regarding plaintiff's pre-existing condition due to the absence of any radiographic studies or medical records. Dr. Shah's testimony regarding plaintiff's pre-existing degenerative spinal condition, when read in conjunction

24

with Dr. Pello's and Dr. Dworkin's testimony regarding the injuries plaintiff sustained in the accident, warranted the aggravation charge given by the court. Accordingly, the court did not err in providing the aggravation charge based on the evidential record.

We are similarly unconvinced the court erred in allowing the parties to provide supplemental closings once it discovered it had not included an aggravation charge in its proposed jury instructions. Defendant was aware of the aggravation issue prior to trial as Dr. Shah's report—where he opined plaintiff's degenerative changes in her spine were "aggravated" by the accident—was served in January 2023, well in advance of the October 2023 trial. Dr. Shah's trial testimony was videotaped in August 2023 and preserved pursuant to Rule 4:14-9 for use at trial. At the de bene esse deposition, he again offered his opinion that plaintiff's pre-existing asymtomatic degenerative changes were aggravated by the accident. Defendant did not object to Dr. Shah's testimony.

Moreover, plaintiff requested an aggravation charge in her pre-trial submissions. Dr. Shah's videotaped testimony was then played at trial, again raising the aggravation issue. In short, defendant was clearly on notice of the aggravation issue in advance of trial and during trial. When the court

25

recognized, after closing arguments, it had overlooked the charge and that plaintiff had failed to request the instruction during the charge conference, the court permitted the parties to supplement their arguments to address the aggravation issue. The supplemental closings did not create a risk of confusion to the jury, as plaintiff's degenerative pre-existing injures had been discussed at length by both parties at trial. We conclude this procedure did not prejudice defendant, and there was no unfair surprise given the ever-present aggravation issue prior to and during trial. We discern no basis to disturb the court's decision.

## C.

Defendant asserts, for the first time on appeal, the jury's verdict of "two and a half times" his policy limits renders "any enhanced interest, costs and attorney's fees" awarded pursuant to the offer of judgment rule, Rule 4:58-2, an undue hardship.

Plaintiff contends this argument should be disregarded because defendant failed to raise it before the trial court. Plaintiff points out during the pendency of her motion for offer of judgment penalties, defendant advised the trial court he did not object to the calculation of pre-judgment interest and costs; and his only objection was to the hourly rate sought by plaintiff's counsel. Plaintiff

26

asserts defendant never raised the issue of his financial hardship and has not provided any basis to substantiate that argument.

Rule 4:58-2 deals with consequences of non-acceptance of an offer of judgment. Rule 4:58-2(c), relevant here, provides:

> [n]o allowances shall be granted . . . if they would impose undue hardship or otherwise result in unfairness to the offeree. If undue hardship can be eliminated by reducing the allowance to a lower sum, the court shall reduce the amount of the allowance accordingly. The burden is on the offeree to establish the offeree's claim of undue hardship or lack of fairness.

Here, defendant did not advance this hardship claim in opposition to plaintiff's post-trial motion for fees and costs under Rule 4:58-2. Ordinarily, when a party fails to raise an issue to the trial judge, we "will decline to consider" those questions "unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest." Zaman v. Felton, 219 N.J. 199, 226-27 (2014) (quoting State v. Robinson, 200 N.J. 1, 20 (2009)). Even if we were to consider defendant's belated argument, we conclude it is unpersuasive. The record is devoid of any evidence of hardship or unfairness, and Rule 4:58-2(c) places the "burden" on defendant to show "undue hardship or lack of fairness." Defendant provides nothing for this court to determine whether he meets that burden, other than claiming the award is too high.

Accordingly, we discern no basis to disturb the trial court's order awarding counsel fees and costs.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-1360-23